**IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE**
**AT KNOXVILLE**
**MAY 1999 SESSION**

FILED

August 12, 1999

Cecil Crowson, Jr.
Appellate Court
Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | |
| | ) | |
| Appellee, | ) | C.C.A. No. 03C01-9810-CR-00371 |
| | ) | |
| vs. | ) | Hamilton County |
| | ) | |
| **JERRY C. PENDERGRASS** | ) | Hon. Douglas A. Meyer, Judge |
| **and** | ) | |
| **BROAD STREET VIDEO,** | ) | |
| **a business entity,** | ) | (Possession of Obscene Matter with |
| | ) | Intent to Distribute, Distribution of |
| Appellants. | ) | Obscene Matter) |

**FOR THE APPELLANT
JERRY C. PENDERGRASS:**

**H. LOUIS SIRKIN**
Attorney at Law
105 W. Fourth St., Ste. 920
Cincinnati, OH 45202

**JOHN E. HERBISON**
Attorney at Law
2016 Eighth Ave. S.
Nashville, TN 37204

**FOR THE APPELLANT
BROAD STREET VIDEO:**

**ARVIN H. REINGOLD**
Attorney at Law
1010 Market St.
Chattanooga, TN 37402

**FOR THE APPELLEE:**

**JOHN KNOX WALKUP**
Attorney General & Reporter

**ELLEN H. POLLACK**
Asst. Attorney General
425 Fifth Ave. North
2d Floor, Cordell Hull Bldg.
Nashville, TN 37243-0493

**VICTOR S. JOHNSON, III**
District Attorney General

**BARRY STEELEMAN**
Asst. District Attorney General
600 Market St., Courts Bldg.
Chattanooga, TN 37402

OPINION FILED:_____

**REVERSED & DISMISSED**

**JAMES CURWOOD WITT, JR., JUDGE**

## OPINION

The defendants, Jerry C. Pendergrass and Broad Street Video, were convicted of obscenity-related crimes at the conclusion of a jury trial in the Hamilton County Criminal Court. Both defendants were convicted of distribution of obscene matter, a Class A misdemeanor. See Tenn. Code Ann. § 39-17-902(a), (c)(1) (1997). Pendergrass was also convicted of possession with intent to distribute obscene matter, a Class A misdemeanor. See Tenn. Code Ann. § 39-17-902(a), (c)(1) (1997). Pendergrass received an eleven month, 29 day sentence, 75 percent of which was to be served in the county workhouse. Broad Street Video was fined $31,000. In this direct appeal, the defendants raise numerous issues for our consideration:

1. Whether proof of the *mens rea* is constitutionally sufficient to support each conviction.
2. Whether prosecutorial misconduct in closing argument warrants a new trial.
3. Whether the trial court properly instructed the jury.
4. Whether the cumulative effect of alleged prosecutorial misconduct and improper instructions violated the defendants' due process guarantees.
5. Whether Code section 39-17-902 is unconstitutional either on its face or as applied.

Having reviewed the record and the briefs of the parties, heard oral arguments, and studied the applicable law, we find the evidence insufficient to support the convictions. Accordingly, we reverse the convictions and dismiss the prosecution.

On January 30, 1996 an officer with the Chattanooga Police Department went into a business establishment at 2025 Broad Street. The officer looked around the store for 30 to 45 minutes and observed various types of merchandise of a sexual nature, including "sex toys" and sexually oriented videotapes. The videotapes were grouped together by the types of sex acts depicted. The officer selected a video entitled "Half and Half" and took it to the clerk behind the front desk. The clerk rang up the purchase; the officer tendered $53.82 and left the store. The only conversation the officer had with the clerk pertained to

the purchase price and possibly to the clerk checking the officer's identification upon entering the store.

Thereafter, the officer viewed the videotape in furtherance of his investigation, and obscenity charges were initiated against the defendants.

At trial, the state presented the testimony of the officer regarding his observations and purchase on January 30, 1996. In addition to evidence of the facts described above, the officer testified that he did not see the defendant Pendergrass at Broad Street Video. The state also presented evidence via stipulation of the parties that (1) the Hamilton County Register of Deeds would testify that Jerry C. Pendergrass of 2437 Rossville Boulevard, Chattanooga, Tennessee, held the deed to the property at 2025 Broad Street, (2) the Chattanooga city treasurer would testify that (a) an application for business tax license 45480 was filed in the name Video and More by Jerry C. Pendergrass on June 9, 1993, (b) the name of the business was changed from Video and More to Broad Street Video, (c) Broad Street Video held business license 45480 in the name Jerry C. Pendergrass from April 1, 1995 to March 31, 1996, and (3) the Jerry C. Pendergrass referenced in the documents supporting the preceding stipulations was the same Jerry C. Pendergrass on trial. The state offered photographs of the building at 2025 Broad Street, which depict two neon signs reading "Adult Bookstore" along the front and one side of the building and two additional neon signs in the two front windows reading "Adult Books Videos Toys." The state also offered the videotape "Half and Half" and its printed cardboard container, and the tape was viewed in its entirety by the jury.

The defense presented no evidence.

## I. Sufficiency of the Evidence

The first issue presented on appeal, and the one which is dispositive of the case, is whether the evidence that the defendants knowingly committed the crimes is sufficient to sustain their convictions.

When an accused challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 324, 99 S. Ct. 2781, 2791-92 (1979); State v. Duncan, 698 S.W.2d 63, 67 (Tenn. 1985); Tenn. R. App. P. 13(e). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Dykes, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990).

Moreover, a criminal offense may be established exclusively by circumstantial evidence. Duchac v. State, 505 S.W.2d 237 (Tenn. 1973); State v. Jones, 901 S.W.2d 393, 396 (Tenn. Crim. App. 1995); State v. Lequire, 634 S.W.2d 608 (Tenn. Crim. App. 1987). However, before an accused may be convicted of a criminal offense based upon circumstantial evidence alone, the facts and circumstances "must be so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant." State v. Crawford, 225 Tenn. 478, 470 S.W.2d 610 (1971); Jones, 901 S.W.2d at 396. In other words, "[a] web of guilt must be woven around the defendant from which he cannot escape and from which facts and circumstances the jury could draw no other reasonable inference save the guilt of the defendant beyond a reasonable doubt." Crawford, 470 S.W.2d at 613; State v. McAfee, 737 S.W.2d 304, 305 (Tenn. Crim. App. 1987).

In determining the sufficiency of the evidence, this court should not reweigh or reevaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this court substitute its inferences for those drawn by the trier of fact from the evidence. Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956); Farmer v. State, 574 S.W.2d 49, 51 (Tenn. Crim. App. 1978). On the contrary, this court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. Cabbage, 571 S.W.2d at 835.

In pertinent part, the statute that the defendants were convicted of violating provides

> It is unlawful to knowingly produce, send or cause to be sent, or bring or cause to be brought, into this state for sale, distribution, exhibition or display, or in this state to prepare for distribution, publish, print, exhibit, distribute, or offer to distribute, or to possess with intent to distribute or to exhibit or offer to distribute any obscene matter. . . .

Tenn. Code Ann. § 39-17-902(a) (Supp. 1995) (amended 1996).

As relevant to this case, the general *mens rea* provisions of the Criminal Code provide, "'Knowing' refers to a person who acts knowingly with respect to the conduct or to circumstances surrounding the conduct *when the person is aware* of the nature of the conduct or that the circumstances exist." Tenn. Code Ann. § 39-11-302(b) (1997) (emphasis added); see also Tenn. Code Ann. § 39-11-106(a)(20) (1997).

Additionally, Code section 39-17-901 provides that certain definitions apply to Title 39, Part 9 (obscenity), unless the context requires otherwise. Tenn.

Code Ann. § 39-17-901 (1997). Thereafter, the section supplies the following definition. "'Actual or constructive knowledge': a person is deemed to have constructive knowledge of the contents of material who has knowledge of facts which would put a reasonable and prudent person on notice as to the suspect nature of the material[.]" Tenn. Code Ann. § 39-17-901(1) (1997).

At trial, the state's case was geared toward a showing of the defendants' *constructive knowledge* of the suspect nature of the film "Half and Half." The trial court's instructions included the section 39-17-901(1) definition of the phrase "actual or constructive knowledge."

The question which arises is whether the "actual or constructive knowledge" definition applies to the crimes enumerated under section 39-17-902, when that section uses the word "knowingly" to describe the mental state required to constitute an offense and makes no reference to the phrase "actual or constructive knowledge."

Tennessee law provides the following principles to aid in interpretation of statutes. Penal statutes are to be construed giving fair import of their terms in a way which promotes justice and effects the objectives of the criminal code. Tenn. Code Ann. § 39-11-104 (1997). The duty of the courts is to give effect to legislative intent while refraining from restricting or expanding a statute's scope beyond that which was intended. See, e.g., State v. Sliger, 846 S.W.2d 262, 263 (Tenn. 1993). In so doing, the courts "must examine the language of a statute and, if unambiguous, apply its ordinary and plain meaning." Parks v. Tennessee Municipal League Risk Management Pool, 974 S.W.2d 677, 679 (Tenn. 1998) (citation omitted). If, on the other hand, the language is ambiguous, the courts must resort to examination of the statutory scheme as a whole and the legislative history in

6

order to determine the meaning.  Id.

With these principles in mind, we hold that the language "knowingly" in the description of the criminal offense is unambiguous.  The term "knowing" is defined in sections 39-11-302(b) and -106(a)(2) and is announced to apply generally to the entire Criminal Code.  Although the language "actual or constructive knowledge" is defined at the beginning of the Criminal Code's obscenity statutes and is said to apply specifically to all sections in that part unless the context requires otherwise, that language is never used in section 39-17-902(a).  Where the legislature has defined both terms and chosen the former, rather than the latter, in describing the elements of the crime, this court must yield to the plain meaning of the language used and its statutorily defined meaning.

We note with interest that the phrase "actual or constructive knowledge" appears only in the definitions section of the obscenity statutes.  See Tenn. Code Ann. §§ 39-17-901 to -911.  Prior to the 1989 revisions to the Criminal Code, section 39-6-1101 defined the term "knowingly" for purposes of the obscenity statutes *to mean* "having actual or constructive knowledge of the subject matter. A person shall be deemed to have constructive knowledge of the contents if he has knowledge of facts which would put a reasonable and prudent man on notice as to the suspect nature of the material." Tenn. Code Ann. § 39-6-1101 (1988) (repealed 1989).  Section 39-6-1104, which defined various crimes related to obscenity, made it unlawful to "knowingly" engage in certain conduct.  Thus, the prior version of the statute incorporated an actual or constructive knowledge definition into the "knowing" requirement.  The 1989 Criminal Code simultaneously established the sections 39-11-302(b), -106(a)(2) definition of "knowing" and deleted the special obscenity definition of the term which encompassed constructive knowledge.  The legislature declined to use that phrase in proscribing the obscenity-related activities.

**7**

We are bound by the legislature's clear and unambiguous choice of the word "knowingly" in section 39-17-902(a) and the corresponding definition of "knowing" in sections 39-11-106(a)(20) and -302(b).

As a consequence, the defendants' convictions may be sustained only if there is sufficient proof of record of *actual knowledge* of the proscribed conduct. Looking first to the convictions of the defendant Pendergrass, the evidence in the light most favorable to the state demonstrates that he owned Broad Street Video and the real property upon which it was located. He applied for and received a business tax license from the City of Chattanooga. Broad Street Video stocked items of a sexual nature, and signage on the building advertised such wares. From this evidence, the jury could conclude that defendant Pendergrass knowingly possessed obscenity for the purpose of distribution and that he knowingly distributed obscenity.[1] Equally, one could conclude that he did not. The degree of his involvement in the business was not established. There was no evidence, for example, that Pendergrass was observed on the premises and/or engaged in activities such as assisting customers with purchases, stocking shelves, receiving merchandise, or ordering merchandise.

As noted above, the facts and circumstances of a case built entirely upon circumstantial evidence "must be so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant." Crawford, 225 Tenn. at 484, 370 S.W.2d at 613; Jones, 901 S.W.2d at 396. The proof presented at trial, even when viewed in the light most favorable to the state, fails to attain that level of

---

[1]It is important to note that not all materials of a sexual nature are obscene. While some sexually oriented matter may be lawfully distributed and possessed for the purpose of distribution, that which is obscene is not constitutionally protected and may be the subject of state criminal proscriptions. See generally Leech v. American Booksellers Ass'n, 582 S.W.2d 738 (Tenn. 1979).

**8**

confidence as to proof that the defendant acted knowingly.

We acknowledge that there is sufficient evidence from which to infer Pendergrass' possession of obscene matter.  See State v. Pendergrass, 795 S.W.2d 150, 154 (Tenn. Crim. App. 1989).  However, that the defendant possessed the material does not *per se* establish that he knowingly did so.  Likewise, the defense conceded at oral argument that, for purposes of appellate review, it did not contest that the video "Half and Half" was obscene.  However, this concession is of no avail in proving the defendant Pendergrass' knowledge *at the time of* his alleged crimes.

Without sufficient proof of knowing conduct, the defendant Pendergrass' convictions cannot stand.

With respect to defendant Broad Street Video's conviction, we find that it must fail, as well.  Broad Street Video is a sole proprietorship operated by Jerry C. Pendergrass.  A sole proprietorship is "[a] form of business in which one person owns all assets of a business in contrast to a partnership and corporation.  The sole proprietor is solely liable for all the debts of the business." Christine Duncan Hitt v. George Burkett Hitt, No. 02A01-9310-CV-00218 (Tenn. Ct. App., Western Section, Nov. 9, 1994) (citing Black's Law Dictionary).  If the evidence is insufficient of the defendant Pendergrass' knowing criminal conduct, it is likewise deficient of such proof with respect to his business identity, Broad Street Video.[2]

## II. Remaining Issues

[2]Because we find the evidence insufficient as to both defendants, it is not necessary to inquire whether prosecution of both the individual defendant and his sole proprietorship violated constitutional prohibitions against double jeopardy.  Furthermore, this issue was not raised by the defendants.

Despite the dispositive nature of our holding that the evidence is insufficient to sustain the defendants' convictions, we nevertheless must address the remaining appellate issues due to the possibility of appeal of our decision. See Jacobs v. State, 224 Tenn. 106, 107, 450 S.W.2d 581, 581 (1970); State v. Donald Ray Hammonds, No. 03C01-9709-CR-00420, slip op. at 5 (Tenn. Crim. App., Knoxville, June 24, 1999).

The resolution of several issues is controlled by our determination that the knowledge element of the proscriptive statute does not include constructive knowledge. The affected issues are (1) whether prosecutorial misconduct occurred when the assistant district attorney incorrectly stated the law, (2) whether the trial court properly instructed the jury, (3) whether section 39-17-902(a) is unconstitutional as applied by the trial court. Based upon our determination in section I above, these first two issues are resolved, and the third is moot.

The defendants complain of prosecutorial misconduct in closing argument when the assistant district attorney made references to the fact that one of the defense attorneys was from Cincinnati, Ohio, and another member of the defense team was from Nashville. At the hearing on the motion for new trial, the trial court found that the state's argument was improper but harmless. We agree. The state's argument was improper; however, much of its prejudice was blunted by the defense attorney Sirkin's references in closing argument to the fact that he was not from Hamilton County, Tennessee. In the context of the state's entire argument, this aspect is not a dominant theme. Moreover, this portion of the argument dealt with the "community" standard for judging whether the videotape was obscene, and the defense has conceded obscenity on appeal. For these reasons, we conclude that the defendants were not prejudiced by this argument. Harrington v. State, 215 Tenn. 338, 340, 385 S.W.2d 758, 759 (1965) (when an issue of prosecutorial

**10**

misconduct is presented, the proper inquiry is "whether the improper conduct could have affected the verdict to the prejudice of the defendant").

The defendants raise several related constitutional issues. First, they contend that the criminalization of the distribution of obscene videos violates the fundamental rights of the consumers of obscenity because the effect is to deny such consumers any meaningful access to obscene materials. We have reviewed the state and federal precedents commended to us by the defense in support of this claim. We conclude that the Tennessee Constitution does not support such an interpretation. See State v. Marshall, 859 S.W.2d 289 (Tenn. 1993) (obscenity is not protected speech under Tennessee Constitution) (Reid, C.J., and Daughtrey, J., dissenting); Leech v. American Booksellers Ass'n, 582 S.W.2d 738, 745 (Tenn. 1979) ("[T]his court may interpret Article I, § 19 [of the Tennessee Constitution] as granting absolute protection to speech and press and forbid any and all regulation of pornography in Tennessee. We have no inclination to do so."); cf. State v. Pendergrass, 795 S.W.2d 150, 155-56 (Tenn. Crim. App. 1989) (upholding constitutionality of prior obscenity law). We acknowledge that the defendants claim that decisions prior to the supreme court's decision in Davis v. Davis, 842 S.W.2d 588 (Tenn. 1992) are inapt because Davis announced the fundamental right of privacy as a matter of state law. However, we conclude that the supreme court's rulings with respect to Article I, section 19 support a conclusion that the defendants' challenge should be rejected.

In their next constitutional subissue, the defendants contend that the "community" standard for determining whether matter is obscene violates equal protection guarantees. The obscenity statute defines the "community" as the judicial district in which the crime allegedly occurred, and the jury must apply "contemporary community standards" in determining whether the matter is obscene.

Our supreme court has analyzed an analogous challenge to this definition of "community" for violation of the Commerce Clause and found no constitutional infirmity. See Davis-Kidd Booksellers v. McWherter, 866 S.W.2d 520, 530 (Tenn. 1993). In Davis-Kidd, the court found that geographical distinctions for determining whether material is offensive by community standards have been allowed by the United States Supreme Court and that the high court has allowed the states wide latitude in defining "community." The reasoning of Davis-Kidd leads to a conclusion that equal protection is not trampled by a definition of "community" as the judicial district in which the crime is alleged to have occurred, rather than a statewide standard.[3]

The defendants raise two subissues in which they contend that the federal and state decisions which hold that obscenity is not protected speech under the First Amendment and Article I, section 19 of the Tennessee Constitution are wrongly decided, and specifically that Stanley v. Georgia, 394 U.S. 557, 89 S. Ct. 1243 (1969) should be overruled. As the defendants properly conceded, we , as an intermediate appellate court, are bound by the decisions of the Tennessee Supreme Court as to state and federal constitutional questions, and the United States Supreme Court as the ultimate authority as to federal constitutional questions. See, e.g., Barger v. Brock, 535 S.W.2d 337, 340 (Tenn. 1976); State v. Dudley W. Marshall, No. 11 (Tenn. Crim. App., Jackson, July 25, 1990) (applying rule to case in which appellants claimed obscene speech should be constitutionally protected), aff'd on other grounds, 859 S.W.2d 289 (Tenn. 1993). Accordingly, we adhere to prevailing law and hold that obscenity is not protected speech.

---

[3]In fact, when the "community" was defined as the State of Tennessee, the statute was challenged because it did not limit the definition to the judicial district in which the crime was alleged to have occurred. See State v. Frazier, 683 S.W.2d 346 (Tenn. Crim. App. 1984).

Finally, the defendants' claim that the cumulative effect of improper jury instructions and prosecutorial misconduct has been rendered moot by our determinations discussed above.

The defendants' convictions are reversed and the indictments are dismissed.

_____
JAMES CURWOOD WITT, JR., JUDGE

CONCUR:


_____
JOHN EVERETT WILLIAMS, JUDGE


_____
ALAN E. GLENN, JUDGE