# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs July 9, 2003

## STATE OF TENNESSEE v. SANDERS CALDWELL

**Direct Appeal from the Criminal Court for Shelby County**
**No. 01-03034-35    Joseph B. Dailey, Judge**

---

**No. W2002-01595-CCA-R3-CD - Filed August 4, 2003**

---

The Appellant was convicted of burglary of a building and vandalism in the Criminal Court for Shelby County, and was sentenced to a total of seven years of confinement by the trial court. The sole issue the Appellant raises on appeal is whether sufficient evidence was presented at trial to convict him of the charged offenses of burglary and vandalism. Finding no error, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JOHN EVERETT WILLIAMS, J., joined.

Juni S. Ganguli, Memphis, Tennessee, for the appellant, Sanders Caldwell.

Paul G. Summers, Attorney General and Reporter; P. Robin Dixon, Jr., Assistant Attorney General; William L. Gibbons, District Attorney General; and Betsy Carnesale and Steven Jones, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### I.  FACTUAL BACKGROUND

In the early afternoon on December 10, 2002, an alarm was triggered at UWT Logistics on South Fourth Avenue in Memphis, Tennessee. In response to this incident, ADT, the alarm company which serviced UWT, contacted Mr. Charles Clark, a UWT employee, and told him that the back door of the UWT facility had been breached. In response, Mr. Clark drove to the warehouse to inspect the back door. He testified that the fence surrounding the facility had been cut and the back door of the UWT building had been pried off its hinges. The piece of metal which was used to vandalize the building had been left next to the door. Upon further inspection, Mr. Clark noticed that some boxes of batteries had been stolen from UWT. He estimated that about eight ten-pound

boxes, or $1200 worth of batteries, had been taken, and that the damage to the factory door cost about $600-700 to repair. Mr. Clark stated that no one had consent to vandalize the building or remove the boxes containing batteries at that time.

Mr. Clark also testified that he noticed two black males with slender builds about seventy yards away from the facility moving in a manner he described as "a fast walk to a run" near railroad tracks behind the UWT facility. He admitted, however, on cross examination, that they were not carrying any batteries or burglary tools at the time he witnessed them moving away from the factory.

At the same time that ADT had contacted Mr. Clark, it also placed a call to the Memphis Police Department regarding the breach of the warehouse's back door. Officer Adam Amendola responded to the call and went to the facility. He testified that he interviewed Mr. Clark regarding the incident and confirmed the damage to the rear cargo door and the stolen boxes of batteries. Officer Amendola also radioed for further assistance.

Officer Steven Sloan of the Memphis Police Department also responded to the burglary call and searched the railroad tracks behind the UWT facility. He testified that approximately 100 yards from the warehouse, he observed two black males with slender builds carrying six or seven boxes, walking away from the warehouse. Officer Sloan testified that two trains, moving in opposite directions, were traveling between him and the men when he witnessed them, but that he could see "clear under" the trains. He admitted on cross examination that his hearing was obstructed, that he could not tell what the men were wearing, and that the men were not carrying any burglary tools with them.

After the trains had passed, Officer Sloan and his partner followed the men. When a railroad officer with a dog approached the men from the opposite direction, the men dropped the boxes they were carrying. Officer Sloan and his partner placed the men under arrest. One of the men identified himself as Sanders Caldwell, the Appellant. Officer Sloan also confirmed that the three boxes that the Appellant was carrying each weighed about ten pounds, and that they contained batteries.

Finally, Remell Garner testified that he was the other man who was arrested along with the Appellant. Garner testified that the Appellant came to his house the afternoon that the crime was committed and said that he had several boxes of batteries lying outside. He also admitted that he had pled guilty to burglary and vandalism resulting from the charges in this case. He also testified that he never witnessed the Appellant possess or handle any burglary tools, that he had no cuts or scrapes on his hand, that the Appellant stated the boxes were not stolen, and that he never saw the Appellant running the entire time they were together, even when the police arrived.

Based on this evidence, a jury in the Criminal Court for Shelby County convicted the Appellant of burglary of a building and vandalism of an amount between $500 and $1000.

## II. ANALYSIS

The Appellant alleges that there is insufficient evidence in the record to support his convictions for burglary and vandalism. When an accused challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 324 (1979); State v. Duncan, 698 S.W.2d 63, 67 (Tenn. 1985). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. State v. Buggs, 995 S.W.2d 102, 105 (Tenn. 1999); Liakas v. State, 286 S.W.2d 856, 859 (Tenn. 1956). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. Liakas, 286 S.W.2d at 859. This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. Id.

In Tennessee, a person commits burglary who, without the effective consent of the property owner, enters a building other than a habitation (or any portion thereof) not open to the public, with intent to commit a felony, theft or assault. Tenn. Code Ann. § 39-14-402(a)(1). A person is guilty of vandalism when he knowingly causes damage to, or the destruction of, any real or personal property of another, knowing that he does not have the effective consent of the owner. Tenn. Code Ann. § 39-14-408(a).

As the Appellant points out, other than the testimony of Officer Sloan and Mr. Garner that they witnessed the Appellant carrying the boxes of batteries, the Appellant's convictions were based solely on circumstantial evidence. However, the standard of review for sufficiency claims for guilt based on circumstantial evidence is identical to guilt based on direct evidence. Pendergrass, 13 S.W.3d at 392-3. The weight of circumstantial evidence is for the jury to determine. Williams v. State, 520 S.W.2d 371, 374 (Tenn. Crim. App. 1974) (citing Patterson v. State, 475 S.W.2d 201 (1971)).

In this case, both Mr. Clark and Officer Sloan testified that they saw a man resembling the Appellant moving rapidly away from the UWT warehouse. Officer Sloan also testified to arresting this man and identified him as the Appellant. Both Officer Sloan and the Appellant's alleged accomplice, Remell Garner, who pled guilty to burglary and vandalism in this case, testified that they saw the Appellant in possession of boxes containing batteries. According to Garner, the Appellant told Garner that he had batteries in his possession.

From this evidence, the jury was entitled to infer that the Appellant came into possession of the batteries by knowingly vandalizing and burglarizing the UWT facility. This inference is further supported by the fact that Mr. Clark, upon responding to the alarm, witnessed the Appellant walking within seventy yards of the UWT property. Finally, Officer Sloan arrested the Appellant, whom he saw carrying the stolen property, about one hundred yards from the spot where the crimes took place.

The Appellant points out in his brief that Officer Sloan's view of the Appellant was obstructed by moving trains. However, Officer Sloan testified that he could see "clear under" the trains and was adamant that he saw two black males carrying boxes moving away from him. Furthermore, after the trains had passed, Officer Sloan pursued the Appellant, and arrested and handcuffed him after he had dropped the boxes, which were identified as having batteries inside.

The Appellant also points out that no one witnessed him carrying any burglary tools at any time, and that he did not run at any time, even when being followed by the police. However, Mr. Clark testified that burglary tools were left at the scene. The jury was not required to infer that the Appellant's failure to run indicated that the Appellant was innocent of the crimes. The Appellant may have chosen not to run for a variety of reasons, including a desire to appear casual in front of the police and Mr. Clark, to avoid a charge of resisting arrest, or possibly because the Appellant was fatigued from carrying the boxes of batteries out of the building and toward the railroad tracks. The Appellant was arrested after being seen less than 100 yards from the UWT complex carrying the stolen batteries away. We conclude that the evidence presented at trial was sufficient to sustain the Appellant's convictions for burglary and vandalism in an amount between $500 and $1,000.

## III. CONCLUSION

We find that the evidence presented at trial was sufficient for the jury to convict the Appellant of burglary and vandalism in an amount between $500 and $1,000. Accordingly, the judgments of the trial court are AFFIRMED.

_____
ROBERT W. WEDEMEYER, JUDGE

-4-