IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs January 9, 2007

## STATE OF TENNESSEE v. JONATHAN P. TAYLOR

**Direct Appeal from the Circuit Court for Dyer County**
**No. C04-273     Lee Moore, Judge**

_____

**No. W2005-01302-CCA-R3-CD  - Filed April 17, 2007**
_____

The defendant, Jonathan P. Taylor, was convicted by a Dyer County jury of aggravated robbery and was sentenced to eight years incarceration.  On appeal, he challenges the sufficiency of the convicting evidence.  Following our review of the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J.C. McLIN, J., delivered the opinion of the court, in which DAVID G. HAYES and NORMA McGEE OGLE, joined.

Larry E. Fitzgerald, (on appeal and at trial), Memphis, Tennessee, and Ramsdale O'Deneal (at trial), Jackson, Tennessee, for the appellant, Jonathan P. Taylor.

Robert E. Cooper, Jr., Attorney General and Reporter; Elizabeth B. Marney, Assistant Attorney General; C. Phillip Bivens, District Attorney General; and Charles T. Dyer, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**BACKGROUND**

On June 14, 2004, the defendant was indicted for the aggravated robbery of the victim, Baxter Taylor.  A jury trial was conducted on January 19, 2005, from which we summarize the following testimony.  Jessica Hendrix testified that in April 2004 she lived in the front unit of a duplex and the victim lived in the back unit.  On a date in April 2004, Mrs. Hendrix was standing at her front door with the door cracked smoking a cigarette when she saw a long, rectangular older car pull into the driveway and drive back toward the victim's unit.  Mrs. Hendrix noticed that the defendant was driving the car and there was a white female in the passenger seat and a black male in the back seat.  Mrs. Hendrix knew the defendant because they had gone to school together.

Within a minute, the female left in the car by herself, and Mrs. Hendrix stood in the doorway for a few minutes before going back in the house. Once inside, Mrs. Hendrix heard a noise from the victim's unit but did not think much of it. She then heard the victim outside yelling for Mr. Hendrix, her husband. Mrs. Hendrix went outside and saw the victim with a big gash on his forehead and "kind of stumbling up to [their] house with blood squirting out of his head." Mrs. Hendrix never saw the defendant or the other black male leave the residence. Mrs. Hendrix said that the victim related to her what had happened and asked her to call the police.

On cross-examination, Mrs. Hendrix said that the car caught her attention because the victim never had a lot of company, but she had seen the defendant at the victim's house once or twice. Mrs. Hendrix said she was not paying enough attention to completely identify the other man and woman in the car, but she saw the defendant through the front windshield of the car. Mrs. Hendrix said that she had never seen the defendant driving that particular car and that he had been driving a truck the other time she saw him at the victim's house. Mrs. Hendrix only saw the defendant at the victim's residence once the day of the incident, and that was around noon.

Sergeant Chuck Barrineau with the Dyersburg Police Department testified that he responded to a robbery call at the victim's duplex on April 26, 2004 around 2:30 p.m. When he arrived, Sergeant Barrineau observed that the victim was somewhat disoriented and had a bleeding wound on the top of his head. Lieutenant Jim Porter with the Dyersburg Police Department testified that he also responded to the victim's duplex on April 26th in response to a call that there had been a robbery. Lieutenant Porter noted that there were signs of a struggle in the victim's house, and the victim related to him what had happened. Lieutenant Porter explained that the victim had since died but had testified at a preliminary hearing prior to his death. The prosecutor and Lieutenant Porter then read the transcript of the victim's preliminary hearing testimony into evidence. The preliminary hearing occurred approximately three weeks after the robbery.

Through the preliminary hearing testimony, the victim testified that he had known the defendant for approximately eight months. On April 26, 2004, around noon or 1:00 p.m., he was working on his checkbook and had his money out paying bills when the defendant showed up at his house. Upon the defendant's arrival, the victim grabbed his money and stuffed it in his pockets, but he was positive the defendant saw him grab the money. He and the defendant sat around talking and then the defendant got up to leave and said, "I'll see you later." The defendant returned about an hour later with "his buddy," a slender black male whom the victim did not know.

The victim recalled that he let the defendant and his friend inside and they talked for a couple of minutes. While they were talking, the defendant's friend stuck a gun in the victim's face, threatened to kill him, and tried to stick the gun in his mouth. The victim attempted to grab the gun at which point the friend hit him with it, splitting his head open. The victim fell down and both the defendant and his friend started hitting him and going through his pockets. The defendant and his friend took all of the money out of the victim's pockets, ripped his phone from the wall, and left. The victim went to his neighbor's house, the Hendrix's, and they helped him with his injury. The

victim said that the defendant usually drove an older model large car, possibly a Cadillac, but he did not see what kind of car he arrived in that day.

At the trial, the defendant testified that he had known the victim for about a year, they were friends, and he would go to the victim's house two or three times a day. The defendant said that he and the victim would drink alcohol and smoke marijuana. The defendant drove his father's truck to the victim's house on a particular day in April 2004 around 10:30 a.m. and stayed for twenty to thirty minutes. After he left the victim's house, the victim called him on his cell phone and they got into an argument because the defendant told the victim he would not provide him with drugs. The defendant said that after he left the victim's house, he took his mother to dialysis and then took his girlfriend to the health department. He did not hear about the robbery until four days after it happened. On cross-examination, the defendant stated that his mother's car was a gray and silver Lincoln, and his girlfriend was a white female with blond hair.

Investigator Porter testified as a rebuttal witness that he spoke to the defendant three or four days after the robbery, and the defendant told him that he did not know the victim. Investigator Porter stated that later in the conversation the defendant admitted that he knew the victim but said that he had not been at the victim's house the day of the robbery.

Following the conclusion of the proof, the jury returned a verdict of guilty as charged, and the defendant was sentenced to eight years in the Department of Correction.

## ANALYSIS

The defendant challenges the sufficiency of the convicting evidence. Specifically, the defendant argues that there was a reasonable doubt that he committed the robbery because it was possible that: (1) the victim engineered the robbery charge against him because he would not get drugs for the victim; (2) the victim could have had a cloudy memory regarding the robbery because he smoked marijuana in the past; and (3) Mrs. Hendrix could have been mistaken in her identification of the defendant as the person she noticed at the victim's duplex that day.

We begin our review by reiterating the well-established rule that once a jury finds a defendant guilty, his or her presumption of innocence is removed and replaced with a presumption of guilt. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992). Therefore, on appeal, the convicted defendant has the burden of demonstrating to this court why the evidence will not support the jury's verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000); *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). To meet this burden, the defendant must establish that no "rational trier of fact" could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *State v. Evans*, 108 S.W.3d 231, 236 (Tenn. 2003); *see* Tenn. R. App. P. 13(e). In contrast, the jury's verdict approved by the trial judge accredits the state's witnesses and resolves all conflicts in favor of the state. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). The state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. *Carruthers*, 35 S.W.3d at 558. Questions concerning the credibility of

the witnesses, conflicts in trial testimony, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact and not this court. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). We do not attempt to re-weigh or re-evaluate the evidence. *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006). Likewise, we do not replace the jury's inferences drawn from the circumstantial evidence with our own inferences. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

"Robbery is the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a). The offense becomes aggravated robbery when it is accomplished with a deadly weapon or by displaying an article which is used to cause the victim to reasonably believe it is a deadly weapon, or when the victim suffers serious bodily injury. *Id.* § 39-13-402(a). A person is criminally responsible for the conduct of another if, "[a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense." *Id.* § 39-11-402(2). Criminal responsibility is not a separate crime but instead a theory by which the state may prove the defendant's guilt based upon another person's conduct. *State v. Mickens*, 123 S.W.3d 355, 389-90 (Tenn. Crim. App. 2003).

Upon review, we conclude that the defendant has failed to prove that no rational trier of fact could have found him guilty beyond a reasonable doubt. In the light most favorable to the state, the evidence showed that the defendant and an unknown friend visited the victim at his home; whereupon, the defendant's friend pulled a gun on the victim, pistol-whipped him, and both men hit him and stole money out of his pockets. During a preliminary hearing, the victim identified the defendant as one of the individuals involved. The victim's neighbor, Jessica Hendrix, testified at trial that she saw the defendant, along with a black male and a white female, pull into the driveway and head toward the victim's duplex. Mrs. Hendrix saw the female immediately leave in the car, and soon after heard the victim calling for help. Mrs. Hendrix knew the defendant from school and was sure he was the driver of the car. Investigator Porter testified that the defendant initially denied knowing the victim.

While the defendant testified that he had nothing to do with the robbery and said that the victim was mad at him because he refused to provide the victim with drugs, all the testimony was heard and assessed by the jury. By its verdict, the jury accredited the testimony of the state's witnesses and discredited the defendant's testimony. The defendant's suggestions that the victim fabricated the robbery, that the victim's memory was cloudy because of past marijuana use, or that Mrs. Hendrix was mistaken in her identification are simply unsupported speculations. The defendant is not entitled to relief.

**CONCLUSION**

-4-

Based on the foregoing reasoning and authorities, we affirm the judgment of the Dyer County Circuit Court.

_____
J.C. McLIN, JUDGE