IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs December 2, 2008

## STATE OF TENNESSEE v. CHRISTOPHER TYUS

**Direct Appeal from the Circuit Court for Madison County**
**No. 07-485      Roger A. Page, Judge**

**No. W2008-00848-CCA-R3-CD   -   Filed May 12, 2009**

The defendant, Christopher Tyus, was convicted by a Madison County jury of one count of theft over $1000. He was subsequently sentenced to three years and six months as a Range I standard offender. On appeal, the defendant challenges the sufficiency of the convicting evidence. After a thorough review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J.C. MCLIN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and CAMILLE R. MCMULLEN, JJ., joined.

Paul E. Meyers, Assistant Public Defender, Jackson, Tennessee, for the appellant, Christopher Tyus.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; James G. Woodall, District Attorney General; and Angela Scott, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS

The defendant was indicted by a Madison County Grand Jury on one count of theft under $500, one count of theft over $1,000, and one count of coercion of a witness. At the trial, Christy Evans, the victim, testified that in May of 2007 she was living at a residence on Judson Cove, along with her son, daughter, and boyfriend. Ms. Evans said that the defendant was a friend who lived in the neighborhood. Ms. Evans recalled that on May 17, 2007, the defendant stayed overnight at her house after a night of drinking. The next morning, on May 18, 2007, Ms. Evans noticed that her CD player and cell phone were missing. Around 2:00 p.m., that same day, she went to the defendant's house and found her missing items at his house. Approximately 30 minutes after she got home, the defendant showed up with some friends and kicked in the door of her house. Ms. Evans said that she called the police, and when they arrived, the defendant and his "friends took off running."

Ms. Evans testified that on May 19, 2007, the defendant called her and told her that he had been arrested in her car. He begged her not to report the car stolen. After the phone call, Ms. Evans looked for her single set of car keys but was unable to locate them. She then went outside and discovered her car was missing. As a result, Ms. Evans went to the police station and reported her car stolen. Ms. Evans asserted that she did not give consent to the defendant to take her car. She did not know how the defendant got the keys to her car but surmised that the defendant took them after he kicked in the door to her house. She noted that she had to pay about $600 to get the car out of the impound lot. She testified that she paid $3000 for the car and had purchased it about three months prior to the defendant stealing it. She reiterated that at no time did she give the defendant permission to take her belongings or car. Ms. Evans also recounted that less than an hour after she reported her car stolen, the defendant called her and threatened her.

On cross-examination, Ms. Evans said that the door to her house was not secure because it had been kicked in many times. Ms. Evans also acknowledged that the phone taken by the defendant belonged to her boyfriend. Ms. Evans admitted that in the past she had briefly discussed selling the phone to the defendant.

Officer Gerald Beilke testified that he responded to a disturbance at Judson Cove on May 18, 2007. He spoke with Ms. Evans and she told him that the defendant had stolen some property from her house and left before the police arrived. However, she indicated that she recovered her property except her cell phone. Officer Beilke took her statement and told her to contact the Criminal Investigation Division.

Deputy Dekontee Sinclair testified that on May 19, 2007, at approximately 8:45 a.m., he was traveling west on Airways Boulevard when a vehicle, driven by the defendant, approached the intersection, failed to yield, and attempted to turn in front of him. Deputy Sinclair stopped the defendant and requested his license, registration, and proof of insurance. The defendant gave Deputy Sinclair a false name, Christopher Taylor. However, after Deputy Sinclair could not find the name in the computer, the defendant told Deputy Sinclair that his name was Christopher Tyus. Thereafter, the defendant was arrested for giving a false name, and the vehicle was towed. Deputy Sinclair noted that the vehicle was a 1996 Buick and was registered to Christy Evans.

Officer Travis Vanover testified that on May 19, 2007, Christy Evans, told him that her keys were missing and that someone had stolen her car between the hours of 9:00 p.m. on May 18, 2007; and 7:00 a.m. on May 19, 2007. Officer Vanover recalled that he talked to the defendant, who denied that he stole Evan's car.

The defendant's girlfriend, Amber Alexander, testified that on May 31, 2007, Christy Evans told her that she was sorry but "she had to do what she had to do because her car was impounded, so she had to tell a lie." Ms. Alexander said that Ms. Evans found the CD player and sold the cell phone to the defendant for ten dollars. Ms. Alexander recalled that on May 18, 2007, she took the defendant to Ms. Evans' home to get the keys to Ms. Evans' car so that the defendant could go to work the next day. Ms. Alexander testified that she observed Ms. Evans hand the keys to the defendant and heard Ms. Evans tell the defendant to have the car back by 10:00 a.m. the next morning. On cross-examination, Ms. Alexander admitted that she never reported this information

to police investigators and had never testified previously under oath, although she was present at the arraignment and preliminary hearing.

Cortez Byars, the defendant's cousin, testified that he went with the defendant to some lady's house the evening of May 17th. They watched television for a while then left around midnight. As a rebuttal witness, the state re-called Ms. Evans. Ms. Evans testified that she had never seen Mr. Byars and he was not at her house the evening of May 17th. Ms. Evans reiterated that the defendant came over around 6:00 p.m., stayed the night, and was driven home the next morning.

Based on the foregoing evidence, the jury acquitted the defendant of the charges of theft under $500 and coercion of a witness but found him guilty of theft over $1,000.

## ANALYSIS

On appeal, the defendant challenges the sufficiency of the convicting evidence. Specifically, the defendant argues that the evidence presented at trial was insufficient for a jury to find him guilty of theft of property because there was "no reliable, unbiased evidence" that he took the victim's car without her consent and with the intent to deprive her of the vehicle.

We begin our review by setting forth the well-established rule that once a jury finds a defendant guilty, his or her presumption of innocence is removed and replaced with a presumption of guilt. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992). Therefore, on appeal, the convicted defendant has the burden of demonstrating to this court why the evidence will not support the jury's verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000); *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). To meet this burden, the defendant must establish that no "rational trier of fact" could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *State v. Evans*, 108 S.W.3d 231, 236 (Tenn. 2003); *see* Tenn. R. App. P. 13(e). In contrast, the jury's verdict approved by the trial judge accredits the state's witnesses and resolves all conflicts in favor of the state. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). The state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. *Carruthers*, 35 S.W.3d at 558. Questions concerning the credibility of the witnesses, conflicts in trial testimony, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact and not this court. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). We do not attempt to re-weigh or re-evaluate the evidence. *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006). Likewise, we do not replace the jury's inferences drawn from the circumstantial evidence with our own inferences. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

"A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103. In the instant case, the sufficiency of evidence is apparent. Ms. Evans' testimony established all essential elements of theft over $1000 beyond a reasonable doubt. While the defendant submits that Ms. Evans' testimony is not credible in light of his own

witnesses's testimony, the jury, as was their prerogative, resolved the conflicting testimony in favor of the state. As previously noted, the jury, as the trier of fact, determines the weight and value of the evidence and resolves all conflicts in the evidence. *See Bland*, 958 S.W.2d at 659. Accordingly, we conclude that the evidence was sufficient to sustain the defendant's conviction, and he is not entitled to relief on this issue.

## CONCLUSION

Based on the foregoing reasoning and authorities, the judgment of the trial court is affirmed.

_____
J.C. McLIN, JUDGE