# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs September 9, 2009

## STATE OF TENNESSEE v. RICKY EUGENE SCOVILLE

**Direct Appeal from the Circuit Court for Marshall County**
**No. 08-CR-71    Robert Crigler, Judge**

---

**No. M2009-00538-CCA-MR3-CD - Filed March 17, 2010**

---

A Marshall County jury convicted the defendant, Ricky Eugene Scoville, of two counts of harassment. The trial court merged the convictions and sentenced the defendant as a Range I, standard offender, to two years in the Tennessee Department of Correction. On appeal, the defendant challenges the sufficiency of the convicting evidence. After review of the record, the parties' briefs, and the applicable law, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J.C. MCLIN, J., delivered the opinion of the court, in which JERRY L. SMITH and NORMA MCGEE OGLE, JJ., joined.

Donna Orr Hargrove, District Public Defender, Lewisburg, Tennessee; Michael J. Collins, Shelbyville, Tennessee, and William J. Harold, Lewisburg, Tennessee, Assistant Public Defenders, for the appellant, Ricky Scoville.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; Charles Frank Crawford, Jr., District Attorney General; and Weakley E. Barnard, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Background

The Marshall County Grand Jury indicted the defendant, Ricky Eugene Scoville, on two counts of harassment. The parties presented the following evidence at the jury trial held on October 27, 2008.

The victim, Benita Nicholson, testified that she was a life long resident of Marshall County. She had been the assistant customer service manager at Kroger in Lewisburg, Tennessee for twenty years. Ms. Nicholson was working on September 9, 2007, from around 8:00 a.m. until 4:30 p.m. She stated that on that day she was working at the customer service desk and answered the phone when someone called the store. Ms. Nicholson testified that she had done that "fairly often" while employed at Kroger. When she answers calls at work, Ms. Nicholson's procedure is to say, "Thank you for calling Lewisburg Krogers. [sic] This is Benita. How may I help you?" Ms. Nicholson stated that she is the only Benita employed at the Lewisburg Kroger.

Ms. Nicholson testified that in 2006, she was the victim of the defendant's telephone harassment. She had no relationship with or connection to the defendant, and she "believ[ed] that he may have been a customer that [came] into the store." While at work, Ms. Nicholson was "out in the public," and any customer that came in the store could view her. She stated that the defendant called her work, cellular, and home phones. Ms. Nicholson said that the telephone book lists her home number under her mother's name. Ms. Nicholson also said that the defendant got her cellular phone number from her co-worker by pretending to be someone that Ms. Nicholson knew. The defendant told the co-worker that he had lost Ms. Nicholson's phone number and needed to contact her. The defendant repeatedly called Ms. Nicholson, and she had him arrested. Ms. Nicholson said that because she was pregnant during that time, the defendant's behavior caused her to fear for herself and her family. The jury in that case found the defendant guilty, and the court sentenced him to probation.

On September 9, 2007, shortly after 2:00 p.m., Ms. Nicholson answered the phone while working at the customer service desk at Kroger. Ms. Nicholson said that after she answered the phone and identified herself, the caller "kept on asking the question, 'Who are you? Who are you?'" Ms. Nicholson said that she asked the caller who he would like to speak to, and "he proceeded on to say different negative things about [her], 'Are you black? Are you black? You are black. You are fat. You are ugly.'" The caller continued to say these negative things and never asked about "any product or anything in the store. . . ." Ms. Nicholson had someone get the store manager so he could listen to the call. The store manager went to the customer service desk, and Ms. Nicholson put the call on speaker phone so the manager could hear the conversation. She said that the manager heard the caller say, "You have got me on speaker phone" before he hung up the phone. Ms. Nicholson estimated that the phone call lasted "three to four minutes."

To Ms. Nicholson's knowledge, the defendant knew that she worked at that Kroger store. She said that the defendant had called the Kroger "approximately one year" before the phone call on September 9, and she answered the phone when he called. She stated that she had previously spoken to the defendant on the phone enough times to recognize and identify

-2-

his voice the day that he called Kroger. According to Ms. Nicholson, she is "101 percent certain" that she heard the defendant's voice on the phone call that was the subject of the trial. She identified the defendant in the courtroom as the person whose voice she heard. Ms. Nicholson stated that, when he called, the defendant never identified himself as Ricky Scoville, but instead, he identified himself as "Steve."

When the defendant hung up the phone, Ms. Nicholson called the sheriff's department trying to contact Captain Norman Dalton, who investigated the previous case between her and the defendant. Ms. Nicholson, the store manager, and Captain Dalton discussed subpoenaing the store's records of incoming phone calls. Ms. Nicholson testified that because of the defendant's previous calls, this call "really upset [her] because [she] felt like it was not only affecting [her] . . . working ability, but it was also affecting [her] . . . taking care of [her] family, and [she] worried about . . . if [her] family was going to be safe." She said that this phone call resurfaced her fears from the defendant's previous phone calls. Ms. Nicholson stated that when she was walking to her car after work, she was thinking, "Is he out here in this parking lot lurking around and knowing I am getting in my car and maybe trying to follow me home or something[?]" She did not know whether the defendant was calling from a land line or cellular phone or if he was watching her.

On cross-examination, Ms. Nicholson testified that the phone at Kroger did not have caller identification, and she did not have any way of knowing who called. She said that the defendant "tried to change his name and pretend like he was a black man talking on the phone." Ms. Nicholson stated that the defendant "sort of" acted like he knew who she was. The defendant did not tell Ms. Nicholson that they had talked before and did not mention a surveillance video. Ms. Nicholson thought the defendant knew that she still worked at Kroger because she had been working there for twenty years, and she does not "switch jobs." On redirect examination, Ms. Nicholson testified that the defendant also changed his voice "to act like a black man" when he called in 2006.

Michael White, a co-manager at Kroger, testified that he was working at the Lewisburg store on September 9, 2007. September 9 was his first day working at that store; however, he had previously worked with Ms. Nicholson when she did relief work at another store. He said that on September 9, he was working in the back of the store when Ms. Nicholson called for him to come to the customer service desk and listen to a phone call. Mr. White went to the desk where Ms. Nicholson was on the speaker phone. He could not recall the conversation; however, he did remember that the call "alarmed" Ms. Nicholson. Mr. White stated that he could tell that the call had upset Ms. Nicholson by looking at her face. He further stated that he did not hear Ms. Nicholson use foul language or curse at the person on the other end of the phone line. According to Mr. White, if an employee cursed at someone who called the store, Kroger would terminate that person's employment. Mr. White

testified that it would not make sense for an employee that was cursing at someone to call their boss to listen to the conversation. After the phone call, Mr. White gave permission for authorities to subpoena Kroger's telephone records for September 9, 2007. On cross-examination, Mr. White said that he had never heard the defendant's voice before the phone call, and no one had mentioned the defendant to him.

Patty Fagan, Marshall County Circuit Court Clerk, testified that she worked in the general sessions court side of the clerk's office. As part of her job duties, she was "the keeper of the warrants" in the Marshall County General Sessions Court. She also was responsible for the recordings of the general sessions court proceedings. Ms. Fagan produced a recording of the defendant's general sessions proceeding. Ms. Fagan identified a warrant showing a conviction of the defendant and the court sentencing him to probation for eleven months and twenty-nine days. She stated that the defendant would have been on probation on September 9, 2007.

Kim Rice testified that she had been a Misdemeanor Probation Officer in Marshall County for fourteen years. Ms. Rice stated that the court sentenced the defendant to probation in November 2006, and he was one of her probationers. Ms. Rice said that she and the defendant communicated by telephone and recited the defendant's phone numbers for the jury. The court placed the defendant on probation after the jury convicted him of the telephone harassment of Ms. Nicholson. She said that the defendant's probation was due to end on November 7, 2008, and the defendant was still on probation on September 9, 2007. After the defendant called Kroger, Ms. Rice took out a revocation warrant on the defendant, and the court violated his probation. During the investigation, Ms. Rice gave Captain Dalton the defendant's phone numbers that she had in her file.

Captain Dalton, the Captain of Detectives at the Marshall County Sheriff's Office, testified that he investigated the prior and present cases between the defendant and Ms. Nicholson. He spoke with Ms. Nicholson on the phone the day of the incident and went to speak with her at Kroger the next day. When he went to Kroger, Ms. Nicholson gave him a written version of the events. He said that Ms. Nicholson told him that the defendant had called her. Captain Dalton requested the store manager's permission to subpoena the phone records "[t]o determine what phone number had called the store . . . ." He stated that although Ms. Nicholson knew who had called her, he wanted the phone records for "more evidence to confirm what [Ms. Nicholson] was telling [him]." Captain Dalton requested records from early morning through late afternoon of September 9, 2007. After receiving the defendant's phone numbers from Ms. Rice, Captain Dalton searched the phone records he had subpoenaed and saw the defendant's phone number listed. Using the records he subpoenaed, Captain Dalton explained that the records listed the defendant's number as calling Kroger on September 9, 2007, at 2:01 p.m. Central Standard Time. The records

showed that the call lasted two minutes and fifty seconds. Captain Dalton testified that the records were consistent with what Ms. Nicholson told him during his investigation.

After verifying that it was the defendant who had called Kroger, Captain Dalton obtained a warrant for the defendant and asked the sheriff's department to contact the defendant. Authorities arrested the defendant, and the trial court held a probation revocation hearing. Captain Dalton testified that he attended the revocation hearing and that the recording of the defendant's testimony that Ms. Fagan produced was true and accurate. The state played the tape recording of the defendant's testimony at the probation revocation hearing for the jury.

On cross-examination, Captain Dalton testified that the phone records did not show that the defendant tried to hide his number when he called Kroger. Captain Dalton agreed that in the recording of the defendant's probation revocation testimony, the defendant stated that he called Kroger about surveillance tapes and that he did not identify himself to Ms. Nicholson. He further agreed that the defendant testified that he laughed when Ms. Nicholson cursed at him, that he did not know her voice or that she worked at Kroger, and that he would have immediately hung up if Ms. Nicholson had identified herself.

The defendant testified that he called Kroger on September 9, 2007, "to obtain surveillance tapes from [2003] as an anniversary date of when [his] ex-fiancee and [he] had met." According to the defendant, he wanted the tapes to "make things right" with his ex-fiancee because they "were going though some heavy stuff . . . ." The defendant said that when he called Kroger, the person who answered the call identified herself as Melissa, and he identified himself as Rick Scoville. The defendant stated that he asked to speak with a manager, and when the defendant said his name, the person who answered the call laughed. After she laughed, the defendant again asked to speak with a manager. According to the defendant, Ms. Nicholson "had a huge hatred for [him]," and when she started to laugh, he thought that "the worst" was taking place. The defendant said that after he asked to speak to a manager the second time, Ms. Nicholson started cursing at him. The defendant stated that he did not make any derogatory remarks toward Ms. Nicholson. The defendant testified that he hung up after the person who answered the call went to get a manager. The defendant further testified that he did not try to hide his phone number when he called Kroger.

According to the defendant, he knew that Ms. Nicholson had worked at Kroger before 2006 because of an incident that happened in 2003. The defendant testified that he did not know that Ms. Nicholson still worked at Kroger, and if she had identified herself as Benita Nicholson, he would have thanked her and said good-bye. The defendant "thought that [he] was speaking to someone by the name of Melissa, and to this day, [he] had no idea [he] was

speaking to [Ms.] Nicholson . . . ." The defendant stated that he "was not speaking to [Ms.] Nicholson" when he called Kroger that day.

Based on the evidence presented, the jury found the defendant guilty of both counts. The trial court merged the convictions and sentenced the defendant, as a Range I, standard offender, to two years in the Tennessee Department of Correction at thirty percent. The defendant filed a motion for new trial, which the trial court denied. This court allowed the late filing of the defendant's notice of appeal.

**Analysis**

On appeal, the defendant raises the single issue of sufficiency of the convicting evidence. Specifically, the defendant asserts that he did not intentionally contact Ms. Nicholson to annoy or alarm her. The state responds by arguing that the evidence was more than sufficient to support the jury's verdict. We agree with the state.

It is well established that once a jury finds a defendant guilty, his or her presumption of innocence is removed and replaced with a presumption of guilt. *State v. Evans,* 838 S.W.2d 185, 191 (Tenn. 1992). Therefore, on appeal, the convicted defendant has the burden of demonstrating to this court why the evidence will not support the jury's verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000); *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). To meet this burden, the defendant must establish that no "rational trier of fact" could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Evans*, 108 S.W.3d 231, 236 (Tenn. 2003); *see also* Tenn. R. App. P. 13(e). In contrast, the jury's verdict approved by the trial judge accredits the state's witnesses and resolves all conflicts in favor of the state. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). The state is entitled to the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence. *Carruthers*, 35 S.W.3d at 558. Questions concerning the credibility of the witnesses, conflicts in trial testimony, the weight and value to be given to the evidence, and all factual issues raised by the evidence are resolved by the trier of fact and not this court. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). We do not attempt to re-weigh or re-evaluate the evidence. *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006). Likewise, we do not replace the jury's inferences drawn from the circumstantial evidence with our own inferences. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

The jury found the defendant guilty of harassment in violation of Tennessee Code Annotated section 39-17-308. Under the statute,

(a) A person commits an offense who intentionally:

. . . .

(2) Places one (1) or more telephone calls anonymously, or at an hour or hours known to be inconvenient to the victim, or in an offensively repetitious manner, or without a legitimate purpose of communication, and by this action knowingly annoys or alarms the recipient;

. . . .

(b)

(1) A person convicted of a criminal offense commits an offense if, while incarcerated, on pre-trial diversion, probation, community correction or parole, the person intentionally communicates in person with the victim of the person's crime if the communication is:

(A) Anonymous or threatening or made in an offensively repetitious manner or at hours known to be inconvenient to the victim;

(B) Made for no legitimate purpose; and

(C) Made knowing that it will alarm or annoy the victim.

Tenn. Code Ann. § 39-17-308 (West 2006).

Examining the evidence in the light most favorable to the state, we conclude the evidence is sufficient to support the defendant's convictions. Ms. Nicholson testified that she was working at Kroger when she answered the phone and identified herself to the caller. From previous interactions, she immediately recognized the defendant's voice although he identified himself as Steve. Ms. Nicholson said that the defendant did not say anything related to Kroger's business and verbally abused her until he realized he was on speaker phone and hung up. Ms. Nicholson testified that the defendant's call upset her and caused her to fear for herself and her family's safety. Mr. White testified that Ms. Nicholson was "visibly upset" and appeared "alarmed" when she called him over to the customer service desk. A rational jury could have found that the defendant knew Ms. Nicholson would be

annoyed or alarmed by his call because by the defendant's own admission, Ms. Nicholson had "huge hatred" for him. Furthermore, the testimony of Mr. Rice established that the defendant was on probation when he called Ms. Nicholson at Kroger. The defendant contends that he was merely calling to request the surveillance video from the store and did not intend to speak to Ms. Nicholson. However, by convicting the defendant, the jury obviously resolved all conflicts in favor of the state and accredited the testimony of the state's witnesses. *See Bland*, 958 S.W.2d at 659. Accordingly, we conclude that the evidence submitted at trial was sufficient to sustain the defendant's convictions for harassment. *See Reid*, 91 S.W.3d at 277. Therefore, the defendant is not entitled relief.

### Conclusion

Based on the foregoing, we affirm the judgment of the trial court.

_____

J.C. McLIN, JUDGE