IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs January 6, 2009

**STATE OF TENNESSEE v. WALTER ROBY**

**Direct Appeal from the Criminal Court for Shelby County**
**No. 06-09029      James C. Beasley, Jr., Judge**

---

**No. W2008-00334-CCA-R3-CD  - Filed May 13, 2009**

---

The defendant, Walter Roby, was convicted by a Shelby County jury of reckless endangerment with a deadly weapon, a Class E felony. For his conviction, the defendant was sentenced as a Range II offender to three years incarceration. On appeal, the defendant asserts that the evidence was insufficient to sustain the conviction. Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed.**

J.C. McLin, J., delivered the opinion of the court, in which Alan E. Glenn and Camille R. McMullen, JJ., joined.

Garland Ergüden (on appeal) and Rusty White (at trial), Assistant Public Defenders, Memphis, Tennessee, for the appellant, Walter Roby.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; William L. Gibbons, District Attorney General; and Patience Branham, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

BACKGROUND

The Shelby County Grand Jury returned an indictment charging the defendant with one count of aggravated assault. The following evidence was presented at the defendant's trial. William Shaddox, the victim, testified that he was introduced to the defendant by Juanita Gurule, who was "like a sister to [the defendant] and almost like a girlfriend to [Mr. Shaddox]." On July 13, 2006, the defendant telephoned Mr. Shaddox and said that Ms. Gurule was with him and asked that Mr. Shaddox come by his home. Ms. Gurule had been missing for the previous five days and the defendant and Mr. Shaddox had been looking for her. When Mr. Shaddox arrived at the defendant's home, the defendant and Ms. Gurule were on the porch. Mr. Shaddox joined them on the porch and he and the defendant questioned Ms. Gurule about where she had been.

Mr. Shaddox testified that suddenly, without provocation, the defendant struck Mr. Shaddox in the head with an object, knocking him unconscious. When Mr. Shaddox regained consciousness, he was lying on the porch and the defendant was kicking him in the face. The defendant then stabbed him in the arm with a butcher knife. Mr. Shaddox heard the defendant say "I am not playing any games" and ask "[w]hy are you following me?" The defendant dragged Mr. Shaddox off the porch and stabbed him several times in the chest. Mr. Shaddox did not hit the defendant, however, he kicked him while the defendant was dragging him. The defendant's brother, who lived with the defendant, took the butcher knife and "wash[ed] the knife off with the water hose and . . . turn[ed] the water hose on the porch and washed the blood off of the porch." Mr. Shaddox tried to find his cellular telephone to call an ambulance, but when he could not locate his phone, he "got in [his] truck and just drove [himself] to the hospital."

Mr. Shaddox testified that he remained in the hospital for three days and was treated for two broken bones in his face, knife cuts to his face, arm, side and chest, and bruises to his hips and legs. The police attempted to interview Mr. Shaddox in the emergency room on the day of the incident, however, because Mr. Shaddox had removed his hearing aids, he could not understand their questions and did not give a statement at that time. After his discharge from the hospital, Mr. Shaddox gave a statement to the police investigator and picked the defendant out of a photographic lineup.

On cross-examination Mr. Shaddox stated that he was not aware that on July 13, 2006, Ms. Gurule was pregnant with the defendant's child. He admitted that he carried a pocket knife for work, but stated that on the day he was stabbed, he was not carrying his knife.

Byron Braxton with the Memphis Police Department testified that after spending three days in the hospital, Mr. Shaddox came in and identified the defendant from a photographic lineup. Officer Braxton took Mr. Shaddox's statement and photographed and documented his injuries which included stitches to his face and multiple bruises and cuts on his chest. After the defendant was arrested and advised of his *Miranda* rights, he told Officer Braxton that while Ms. Gurule was missing, she called him and said that Mr. Shaddox sold her to drug dealers who had held her. The defendant stated that he confronted Mr. Shaddox with Ms. Gurule's assertion and he became irrate and threatened the defendant with his pocket knife. The defendant told Officer Braxton that he punched Mr. Shaddox and stabbed him in the arm as they were struggling on the ground, but denied causing any other injuries to Mr. Shaddox. The defendant told Officer Braxton that Mr. Shaddox had been injured in a police chase the day after their altercation. Officer Braxton found no record of a chase involving Mr. Shaddox and knew that Mr. Shaddox had been hospitalized on the day after he was stabbed. During the interview, the defendant did not complain of injuries and did not appear to have been injured.

On cross-examination, Officer Braxton stated that he did not ask the defendant to remove his shirt to look for injuries. Although the defendant told him that his family members would contact him, Officer Braxton did not receive any calls from members of the defendant's family.

The defendant testified that Ms. Gurule had been missing for several days when she appeared at his house on July 13, 2006. After talking to Ms. Gurule, the defendant called Mr. Shaddox and

asked him to come by to discuss his involvement in Ms. Gurule's disappearance. Mr. Shaddox arrived and he and the defendant began arguing. Mr. Shaddox pulled a knife and the defendant "felt like [his] life and [his] unborn child's life, as well as Ms. Juanita's life was in danger. And [the defendant] did what [he] had to do to protect [himself]."

On cross-examination, the defendant testified that Mr. Shaddox brought his pocket knife out of his pocket, already unfolded, and the defendant reacted, hitting Mr. Shaddox who fell on his knife. The defendant denied that he kicked or dragged Mr. Shaddox and stated that he tried to call the police for assistance. The defendant agreed that he had been previously convicted of aggravated robbery.

Following deliberation, the jury found the defendant guilty of the lesser-included offense of reckless endangerment with a deadly weapon, a Class E felony. Subsequently, he was sentenced as a Range II, multiple offender to three years of confinement.

ANALYSIS

Sufficiency of Evidence

On appeal, the defendant asserts that his testimony at trial supports that his response to a perceived threat from Mr. Shaddox against himself and the pregnant Ms. Gurule was "simply self-defense" and argues "that the record does not reasonably support a conviction for reckless endangerment with a deadly weapon."

We begin our review by reiterating the well-established rule that once a jury finds a defendant guilty, his or her presumption of innocence is removed and replaced with a presumption of guilt. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992). Therefore, on appeal, the convicted defendant has the burden of demonstrating to this court why the evidence will not support the jury's verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000); *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). To meet this burden, the defendant must establish that no "rational trier of fact" could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *State v. Evans*, 108 S.W.3d 231, 236 (Tenn. 2003); *see* Tenn. R. App. P. 13(e). In contrast, the jury's verdict approved by the trial judge accredits the state's witnesses and resolves all conflicts in favor of the state. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). The state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. *Carruthers*, 35 S.W.3d at 558. Questions concerning the credibility of the witnesses, conflicts in trial testimony, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact and not this court. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). We do not attempt to re-weigh or re-evaluate the evidence. *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006). Likewise, we do not replace the jury's inferences drawn from the circumstantial evidence with our own inferences. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

To establish the defendant's guilt of reckless endangerment with a deadly weapon, the state had to prove that the defendant recklessly engaged in conduct that placed or may have placed another person in imminent danger of death or serious bodily injury. Tenn. Code Ann. § 39-13-103(a). "Reckless endangerment is a Class A misdemeanor; however, reckless endangerment committed with a deadly weapon is a Class E felony." *Id.* at § 103(b). "'Reckless' refers to a person who acts recklessly with respect to circumstances surrounding the conduct or the result of the conduct when the person is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur." *Id.* at § 39-11-302(c).

After considering the evidence in the light most favorable to the state, we conclude that a rational trier of fact could have found the defendant guilty of reckless endangerment with a deadly weapon. At trial, Mr. Shaddox testified that he did not have his pocket knife with him during the altercation. He claimed that, without provocation, the defendant struck him in the head hard enough to render him unconscious and then kicked him in the face, dragged him off the porch, and stabbed him several times with a butcher knife. Photographs taken by Officer Braxton four days after the incident showed that Mr. Shaddox suffered multiple injuries. Officer Braxton stated he found no record of the police chase reported by the defendant and that Mr. Shaddox was in the hospital on the day that the defendant alleged he was injured in a police chase. The defendant claimed that Mr. Shaddox instigated the fight. He claimed that he reacted to a knife threat by Mr. Shaddox and that Mr. Shaddox was injured when he fell on his own knife. The defendant testified that he stabbed Mr. Shaddox only once with the pocket knife as they struggled. He attributed Mr. Shaddox's other injuries to a police chase that took place on the day after Mr. Shaddox attacked him. The defendant's sufficiency argument essentially amounts to a challenge to the jury's credibility determinations. The weight and credibility of the witnesses' testimony and the reconciliation of conflicts in the testimony, if any, are matters entrusted exclusively to the trier of fact. Here, the jury by its verdict accredited the testimony of the state witnesses. Because the evidence was sufficient for a rational jury to find the defendant guilty beyond a reasonable doubt, we affirm the judgment.

## CONCLUSION

Based on the foregoing reasoning and authorities, the judgment of the trial court is affirmed.

_____
J.C. McLIN, JUDGE

-4-