# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
September 27, 2011 Session

## STATE OF TENNESSEE v. TRAY TURNER

**Appeal from the Criminal Court for Knox County**
**No.  92395     Bob R. McGee, Judge**

---

**No. E2010-02540-CCA-R3-CD - Filed March 30, 2012**

---

The Defendant, Tray Turner, appeals as of right from a jury conviction for aggravated robbery, a Class B felony, in the Criminal Court for Knox County.  Following a sentencing hearing, the court imposed a sentence of 14 years incarceration at 100 percent service.  The Defendant contends (1) that the State presented insufficient evidence to sustain his conviction for aggravated robbery and (2) that the trial court erred in ordering him to serve 100 percent of his sentence.  After a review of the record, we affirm the judgments of the trial court.

**Tenn. R. App. 3 Appeal as of Right; Judgments of the Criminal Court are Affirmed.**

D. KELLY THOMAS, JR., J., delivered the opinion of the Court, in which NORMA MCGEE OGLE and CAMILLE R. MCMULLEN, JJ., joined.

Joseph A. Fanduzz, Knoxville, Tennessee, for the appellant, Tray Turner.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; Randall E. Nichols, District Attorney General; Ta Kisha M. Fitzgerald, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The Knox County Grand Jury indicted the Defendant for two counts of aggravated robbery and one count of resisting arrest on August 18, 2009.  After a jury trial, the Defendant was convicted of the offenses as charged.  The court merged the two counts of

aggravated robbery. The Defendant was sentenced as a Range II, multiple offender and ordered to serve 14 years for the aggravated robbery and 6 months for the resisting arrest. The court ordered the sentences to run concurrently for a total effective sentence of 14 years at 100 percent service in the Tennessee Department of Correction. The Defendant filed a timely motion for new trial. After a hearing, the court denied the motion for new trial on November 15, 2010. The Defendant perfected a notice of appeal to this court on December 7, 2010.

## I. Evidence at Trial

Ethan Grantham testified that on May 13, 2010, he was working as the Loss Prevention Associate at the K-Mart located on North Broadway in Knoxville, Tennessee. During his shift, he received a call from the service desk employee alerting him of a possible shoplifter in the footwear department. Mr. Grantham testified that after he checked the area and observed no activity, he "came up to the front of the store and [the service desk employee] pointed out the [D]efendant as the person who reported seeing th[e shoplifter in footwear]." Mr. Grantham stated that he "noticed the [D]efendant had a shopping cart and did not pay for it at the service desk[,] which was the only operating register open at that point." Mr. Grantham explained that because of the Defendant's actions and the circumstances, he began to suspect that the Defendant would "push out" the merchandise.

-2-

Mr. Grantham further explained that a "push out" was a common theft practice of "pushing . . . a large amount of merchandise" out of a store. Mr. Grantham decided to wait in the vestibule area for the Defendant in the event he pushed out the merchandise. Mr. Grantham contacted the manager, Michael Johnson, to inform him of the potential theft. He then left to wait in the vestibule area. Mr. Grantham explained that it was K-Mart's policy to apprehend shoplifters in the vestibule area and that the Defendant did not have K-Mart's permission to take any merchandise from the store.

After observing the Defendant for approximately 15 to 20 minutes, Mr. Grantham saw the Defendant push the cart full of merchandise into the vestibule area. Mr. Grantham approached the Defendant, identified himself as the Loss Prevention Associate, and attempted to stop him from leaving the store. He asked the Defendant to come back into the store with him, and the Defendant became "really nervous." The Defendant started "reach[ing] in his pocket for something" and "grabbing in the shopping cart" at the same time, "grabb[ing] . . . kind of whatever he could." The Defendant then "pulled out a screwdriver" and began "leaning it towards [Mr. Grantham]." Mr. Grantham testified that the Defendant was yelling and cursing and threatening to stab him, so he "backed up" to prevent being "stabbed over the merchandise." After the Defendant fled outside, Mr. Grantham "followed him at a safe distance." A car pulled in front of the store, and the Defendant got into the car and escaped, leaving the screwdriver and the merchandise behind. Mr. Grantham testified that he then told his manager what happened, "and [the manager]

call[ed] 911 shortly after."

Michael Johnson testified that he was the Loss Prevention Manager at the North Broadway K-Mart, and on May 13, 2010, Ethan Grantham informed him of a potential "push out." Mr. Johnson explained that he then "positioned himself outside to assist in the apprehension if needed." According to Mr. Johnson, it all happened very quickly. He witnessed an "adult male exit . . . the building through the front doors with ... a bed-in-a-bag." At the same time, a vehicle "drove quickly up to [the Defendant's] location and parked." The Defendant "proceeded towards the vehicle[,] . . . dropped what he was carrying[,] . . . got in the car, [and] sped off." Mr. Johnson obtained the license plate number of the vehicle and called the police. He described the incident to police, gave them a description of the car and the suspect, and showed them the direction in which the Defendant fled.

Rodney Townsend, a patrol officer with the Knoxville Police Department, testified that he responded to the shoplifting call at the North Broadway K-Mart on May 13, 2010. Officer Townsend further testified that upon his arrival Mr. Grantham handed him "an item" and explained that it was what the Defendant used to "fend him off" during the robbery. Officer Townsend testified that he confiscated the item, sealed it in an evidence bag, and "turned the item into Property."[1]

---

[1] There was additional officer testimony pertaining to the Defendant's arrest. However, it is omitted because the Defendant did not challenge his conviction for resisting arrest.

The Defendant did not present any evidence at trial. However, during both closing and opening arguments, in the motion for judgment of acquittal, and through effective use of cross-examination, the Defendant's position has remained constant; his actions on May 13, 2009, did not rise to the level of aggravated robbery, as defined by Tennessee Code Annotated section 39-13-402, and the State neither presented nor possessed sufficient proof to convict the Defendant of aggravated robbery. The Defendant also argued that the general release eligibility statute, Tennessee Code Annotated 40-35-203(e), applied to the instant case and that the State was required to allege in the indictment that the Defendant had previously been convicted of aggravated robbery.

During the Defendant's motion for judgment of acquittal, specifically, the Defendant asked the court to dismiss the aggravated robbery charge. The Defendant argued that he was solely guilty of shoplifting, as he evinced his intent to deprive K-Mart of the property in question once he walked past all points of sale and pushed the shopping cart into the vestibule area, attempting to exit the store. The Defendant further argued that to distinguish this case from State v. Swift, 308 S.W.3d 827 (Tenn. 2010) because the item was not concealed, as the State suggested, would result in a rule that turned on the difference between a large item, such as the bed in a bag that the Defendant attempted to steal, and a small item, one petite enough to conceal on your person. The Defendant continued by explaining that, analogous to Swift, passing all registers and leaving the store is just as indicative of intent

as taking something out of a package. The Defendant maintained that he had control over the property before Mr. Grantham ever approached him; therefore, he could not have used violence to take the property from Mr. Grantham because he already had control over it when the confrontation occurred. The Defendant argued that he only brandished the weapon to facilitate his escape, and because Tennessee has rejected the continuous offense theory[2], he can neither be guilty of aggravated robbery nor aggravated assault under these facts.

After a one-day trial, the Defendant was found guilty of two counts of aggravated robbery and one count of resisting arrest.

*II. Sentencing Hearing*

The Defendant's sentencing hearing was held on August 12, 2010. At the hearing, neither party offered any witness testimony. The State presented the Defendant's current and prior presentence reports and his "penitentiary pack," including all of his prior felony convictions and parole violations. The State asked the court to merge the two counts of aggravated robbery and sentence the Defendant to 18 years for the aggravated robbery and 6 months for the resisting arrest, to run concurrently, for a total effective sentence of 18

---

[2] In some jurisdictions, robbery is viewed as a continuous offense "that is not complete until the perpetrator reaches a place of temporary safety." State v. Owens, 20 S.W.3d 634, 639 (Tenn. 2000). Under this theory, "a robbery is committed, not only if the perpetrator uses force or intimidation to 'take' possession of the property, but also if force or intimidation is used to retain possession immediately after the taking, or to carry away the property, or to facilitate escape." Id. Tennessee has specifically rejected this theory. See Swift, 308 S.W.3d at 831.

years. The State also requested that the court sentence the Defendant as a Range II, multiple offender and order him to serve the 18-year sentence in confinement at 100 percent service, pursuant to Tenn. Code Ann. section 40-35-501(k)(2), because the Defendant had at least one prior conviction for aggravated robbery. The State explained that the Defendant was a Range II offender because he had six felony convictions and only two were required for a Range II classification.

The State asserted that the following enhancement factors were applicable to the Defendant: (1) the Defendant had a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range; (3) the offense involved more than one victim; (8) the Defendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community; and (13) the Defendant was on bail for a prior felony at the time he committed the instant offense. See Tenn. Code Ann. § 40-35-114(1), (3), (8), (13)(A).

The State based its sentencing request primarily on the first enhancement factor, the Defendant's prior criminal history. The "penitentiary pack" showed that the Defendant had six prior felony convictions, multiple misdemeanor convictions, and his convictions evidence prior criminal behavior. The State asked the court to give "a lot of weight [to the Defendant's criminal history] in light of the types of felony convictions [the Defendant] has" on his record: two aggravated robberies, an attempt to commit aggravated robbery, two thefts over $1,000, and one aggravated burglary. The State argued that the court should

weigh the Defendant's criminal history heavily because the instant case involved "the same type of conduct that [the Defendant] has committed in the past" and "clearly, he has not learned from that [because h]e has continued that same conduct." Regarding release eligibility, the State asked the court to sentence the Defendant under Tennessee Code Annotated section 40-35-501(k)(2), which requires the Defendant, who has a prior conviction for aggravated robbery, to serve 100 percent of his sentence before being eligible for release. The State asserted that the stated release eligibility requirement of 100 percent service was not a sentence enhancement. The State further asserted that Tenn. Code Ann. section 40-35-203(e), which requires prior convictions to be charged in the indictment for the imposition of an enhanced sentence on a second or subsequent violation, did not apply in this case.

The Defendant declined to address his prior convictions at the sentencing hearing. Instead, he focused on mitigating factors such as his "rough upbringing." The Defendant explained that he never had loving parents. Also, the Defendant's mother ran off with an unknown man while the Defendant was away at camp. The Defendant also explained that a few years prior to the offense, he was the victim of a "horrible crime in Knox County" and was unable to get the psychological care that he needed. Additionally, the Defendant asked the court to consider the following: (1) he had obtained his GED while previously incarcerated; (2) "he's eager to get back . . . because he's enrolled in classes"; (3) and the circumstances of the offense. Regarding the circumstances of the offense, the Defendant explained that he had no intention of stealing when he entered K-Mart and that "in one little

-8-

second . . . not picking up a bag or already having a bag could've made a difference in whether or not it was an aggravated robbery . . . if it was ruled 100 percent . . . or even in this range."

Addressing his release eligibility, the Defendant argued that Tennessee Code Annotated 40-35-203(e) applies to the instant case. That statute states:

> If the criminal offense for which a defendant is charged carries an enhanced punishment for a second or subsequent violation of the same offense, the indictment in a separate count shall specify and charge that fact. If the defendant is convicted of the offense, then the jury must find that beyond a reasonable doubt the Defendant has been previously convicted the requisite number of times for the same offense. [Only u]pon such finding, the defendant shall be subject to the authorized terms of . . . 40-35-111.

Tenn. Code Ann. 40-35-203(e). The Defendant asserted that section 40-35-203(e) must apply to this case because it applies to enhanced punishments and requiring 100 percent service of a sentence is, in fact, an enhanced punishment for repeat violent offenders. As the sole support for his stated position, the Defendant cited the preamble to Tennessee Code

Annotated section 40-35-501(k)(2).[3]  The Defendant argued that the preamble's language shows that "[t]he legislature clearly intended to deter individuals from committing a second or subsequent aggravated robbery by enhancing punishment for a second or subsequent aggravated robbery conviction."

After hearing the arguments of counsel, the court found that Tennessee Code Annotated section 40-35-203(e) did not apply to the instant case.  The court noted that while it could see the analogy between Tennessee Code Annotated sections 40-35-501(k)(2) and 40-35-203(e), the latter deals with the definition of the offense.[4]  The court explained that this case involved a prior conviction that was not an element of the offense but, rather, a part of the sentencing consideration.  Additionally, the court found the language of Tennessee Code Annotated 40-35-501(k)(2) mandatory and binding.  Thus, the court concluded that the State was not required to charge and prove the prior convictions.

The court also found that enhancement factors (1), (3), (8) and (13) applied to the instant case.  The court noted that because the Defendant committed the crime while on bail, it was required to run the Defendant's pending sentence consecutively to the remainder of the sentence imposed in the case for which the Defendant was on bail.  The court explained

---

[3] That section of the preamble reads:  " WHEREAS, the General Assembly takes notice of significant decreases in violent gun crime in other states following enhancement of punishment for repeat violent criminal offenders . . ." Crim. Offenses-Crim. Procedure-Sentencing Guidelines Act, 2007 Tenn. Pub. Acts, ch. 594, preamble (eff. Jan. 1, 2008).

[4] For example, simple possession second offense, third offense etc. necessarily involves a prior conviction as an element of the charged offense, and punishment is enhanced based upon the number of prior convictions.

that it was also considering some of the mitigating factors: (1) that the Defendant's mother abandoned him at a young age; (2) that the Defendant was the victim of a crime and "certainly that's going to have an effect on a young man"; and (3) "that this [was] not your typical armed robbery case" and the weapon used is "not the kind of weapon that you think about somebody going in to try to use a weapon to scare somebody." The court explained that despite the atypical circumstances,

> it is aggravated robbery. . . . [because t]he taking did not occur until [the Defendant] tried to take the buggy through the door and that's when the confrontation occurred, the weapon was brandished and he accomplished his purpose by the use of a weapon, threatening to use it to kill someone.

In closing, the court noted that it was "constrained to impose more than the minimum sentence" and ordered the Defendant to serve a 14-year sentence at 100 percent.

The Defendant filed a motion for new trial, and a hearing was held on November 9, 2010. After hearing arguments from counsel, the court denied the motion. The Defendant perfected a timely appeal to this court.

ANALYSIS

The Defendant contends that the evidence was insufficient to sustain his conviction for aggravated robbery. The Defendant also contends that the trial court improperly ordered him to serve 100 percent of his sentence because the State did not follow the appropriate pretrial procedures for the imposition of a sentence without the possibility of parole. The State responds that the evidence was sufficient to sustain the Defendant's conviction for aggravated robbery. The State also responds that the court properly ordered the Defendant to serve 100 percent of his sentence in confinement pursuant to Tennessee Code Annotated section 40-35-501(k)(2) because he had a prior aggravated robbery conviction, and the court correctly found that the State was not required to charge that prior conviction in the indictment.

*I. Sufficiency of the Evidence*

An appellate court's standard of review when a defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). The appellate court does not re-weigh the evidence; rather, it presumes that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571

S.W.2d 832, 835 (Tenn. 1978). Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence were resolved by the jury. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). "A verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, and [on appeal] the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Id.; State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). "This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence." State v. Pendergrass, 13 S.W.3d 389, 392–93 (Tenn. Crim. App. 1999).

A conviction for aggravated robbery, as relevant to this case, requires proof that the defendant committed an "intentional or knowing theft of property from the person of another by violence or putting the person in fear" and that the robbery was "accomplished with a deadly weapon or by display of any article fashioned to lead the victim to reasonably believe it to be a deadly weapon." Tenn. Code Ann. §§ 39-13-401(1), -402(1). A "taking" or theft of property occurs if, with intent to deprive the owner of property, a person knowingly obtains or exercises control over the property without the owner's effective consent. Tenn. Code Ann. § 39-14-103. For the purposes of § 39-14-103, a person commits theft of property if the person, with the intent to deprive a merchant of the stated price of merchandise, knowingly commits any of the following acts:

-13-

(1) Conceals the merchandise;

(2) Removes, takes possession of, or causes the removal of merchandise;

(3) Alters, transfers or removes any price marking, or any other marking which aids in determining value affixed to the merchandise;

(4) Transfers the merchandise from one (1) container to another; or

(5) Causes the cash register or other sales recording device to reflect less than the merchant's stated price for the merchandise.

Tenn. Code Ann. § 39-14-146.

It is the use of violence or fear that elevates theft to robbery. State v. Bowles, 52 S.W.3d 69, 80 (Tenn. 2001). "If an individual uses violence or puts another in fear to obtain or exercise control over another's property, he or she has committed a robbery. Therefore, whether a taking is properly characterized as a theft or robbery is contingent upon whether and when violence or fear is imposed." State v. Owens, 20 S.W.3d 634, 638 (Tenn. 2000). In Swift, our supreme court clarified whether the location of the use of violence or fear is relevant in distinguishing theft from robbery. Swift, 308 S.W.3d at 829. The Swift court held that "the temporal proximity between the taking of property and the use of violence or fear is the sole relevant factor." Id.

In Owens, our supreme court held that "the use of fear or violence must precede or be contemporaneous with the taking of property from the person to constitute the offense of

-14-

robbery." Owens, 20 S.W.3d 641. The defendant in Owens entered a Dollar General Store, picked up some merchandise, and exited the store without making payment. The security guard chased the defendant for several blocks. When the security guard closed in, the defendant dropped the merchandise, brandished a box cutter and walked away. The Owens court determined that the taking was completed prior to the defendant's brandishing of the box cutter and modified the conviction to theft. Id. at 641-42.

In Swift, the defendant was charged with aggravated robbery after two Best Buy employees saw him remove games from a display shelf and approached him as he attempted to exit the store. 308 S.W.3d at 829. When one of the employees tried to restrain the defendant, he attempted to punch that employee. Id. After a second attempt to restrain the defendant was unsuccessful, the two employees noticed that the defendant had a knife and backed away for safety reasons. Id. The court in Swift concluded that the taking was completed when the defendant removed the games from their packaging and concealed them. Id. at 831; see Tenn. Code Ann. § 39-14-146 (a)(1). Because the taking was completed prior to the defendant's display of a weapon, the court reduced that defendant's conviction from aggravated robbery to aggravated assault. Id. at 832.

The Defendant cites Swift and Owens in support of his contention that his actions constituted a simple theft rather than an aggravated robbery because the taking was already

complete prior to the use of violence. The State responds that the instant case is distinguishable from Swift and Owens, and it relies upon two unpublished opinions of this court, State v. Mario Merritt, No. W2003–02868–CCA–R3–CD, 2004 WL 2726030 (Tenn. Crim. App. Nov. 30, 2004), perm. appeal denied (Tenn. Feb. 28, 2005) and State v. Jonathan Greer, No. W2009-02414-CCA-R3-CD, 2010 WL 4621730 (Tenn. Crim. App. Nov. 12, 2010), perm. appeal denied, (Tenn. Apr. 12, 2011). In State v. Mario Merritt, this court affirmed the especially aggravated robbery conviction of a defendant who was shoplifting unconcealed merchandise in Goldsmiths. The Defendant had advanced past the cash registers, but had not yet exited the store when he was confronted by one of the store's loss prevention employees; the defendant shot him. State v. Mario Merritt, No. W2003–02868–CCA–R3–CD, 2004 WL 2726030 at *1 (Tenn. Crim. App. Nov. 30, 2004).

In State v. Jonathan Greer, which has very similar facts as the instant case, the defendant passed the cash registers and approached the exit door at Wal-mart with two flat screen televisions in a shopping cart. State v. Jonathan Greer, No. W2009-02414-CCA-R3-CD, 2010 WL 4621730 at *1 (Tenn. Crim. App. Nov. 12, 2010). When the employee asked the defendant for his receipt, he began to grip the shopping cart tightly but did not produce a receipt. Id. The employee then stood in front of the shopping cart and repeated her initial request, and the defendant pushed the cart forward in an aggressive manner, causing the employee to back out of the store. Id. The defendant then brandished a knife, forcing the

employee to allow him to leave because she feared for her safety. Id. A panel of this court concluded that this was an aggravated robbery because the defendant used both his shopping cart and the knife as a weapon contemporaneously with the taking. Id. at *3.

As the State suggests, the instant case is distinguishable from both Owens and Swift and is more on point with Merritt and Greer. In Owens, the defendant had already exited the store and fled several blocks before he brandished the box cutter, so the violence was not used to accomplish the taking. Owens, 20 S.W.3d 641. The taking was already complete prior to the use of violence, and the court properly determined that the evidence was insufficient to support a robbery conviction. See id. In Swift, the supreme court held that the taking of the merchandise occurred when the defendant took the games from the display, removed the packaging and concealed them in his pants; the use of fear occurred after the taking. Id. at 831. In both Owens and Swift, our supreme court held that the confrontation by employees occurred after the taking was complete. See Owens, 20 S.W.3d at 641; Swift, 308 S.W.3d at 831.

Unlike the facts in Owens and Swift, the taking in this case was not completed prior to the initial confrontation by the store employee. While K-Mart employees were suspicious, the Defendant had yet to "evince his intent to deprive [K-Mart] of the property." Swift, 308 S.W.3d 831; see Tenn. Code Ann. § 39-14-103. The Defendant asserts that he evinced his intent to deprive K-Mart of the property, thus completing the theft, when he pushed the cart

-17-

out of the store and into the vestibule area because he effectively "removed" the merchandise from the store. See Tenn. Code Ann. § 39-14-146(a)(2). We disagree. At that point, the Defendant had neither concealed nor removed the merchandise as required by Tennessee Code Annotated section 39-14-146(a)(1)-(2). In Swift, decided after Owens, part of the supreme court's analysis addressed whether the concealment of merchandise in and of itself amounted to a taking. See Tenn. Code Ann. § 39-14-146(a)(1); Swift, 308 S.W.3d at 829. The court held that the theft in Swift was complete, pursuant to Tennessee Code Annotated section 39-14-146 (a)(1), because the defendant effectively evinced his intent to commit theft by removing the packaging and concealing the merchandise. Id. (emphasis added). In this case, the Defendant's actions are not within the ambit of Tennessee Code Annotated section 39-14-146 (a)(1), concealment of merchandise, because the merchandise was not concealed. Likewise, contrary to the Defendant's argument, his actions are not within the scope of Tennessee Code Annotated section 39-14-146 (a)(2), removal of merchandise, either. While the Defendant had begun to remove the merchandise from K-Mart, he did not complete his removal of the merchandise from the store prior to being confronted by the employee. See Tenn. Code Ann. § 39-14-146 (a)(2).[5] The Defendant began to demonstrate an intent to deprive the owner of the property as he pushed the cart toward the exit. At which point, Mr. Grantham confronted the Defendant. The Defendant then brandished a weapon, which enabled him to accomplish the "taking" of merchandise by placing the employee in fear.

[5] It is important to note that none of the subsections of Tennessee Code Annotated section 39-14-146 are applicable to the facts of this case. See id. at §§§§ (a)(1)-(5).

-18-

Construing the facts in a light most favorable to the State, the evidence introduced at trial reflected that the Defendant entered the store with a screwdriver-like[6] object, attempted to divert the attention of Loss Prevention by falsely reporting a shoplifter in the store, attempted to push the merchandise out, was confronted by a store employee, brandished the weapon, fled, and had a get-away driver positioned in front of the store to facilitate his escape. The evidence also illustrated that the Defendant used fear to accomplish the theft, elevating it to robbery, by brandishing a screwdriver-like object, cursing, and threatening to "stab" Mr. Grantham when he confronted the Defendant at the exit door. After thoroughly reviewing the record and applicable authorities, we hold that the use of violence occurred contemporaneously with the taking. Accordingly, we conclude that the evidence was sufficient to sustain the aggravated robbery conviction.

## II. Release Eligibility

The Defendant argues that the court improperly ordered him to serve 100 percent of his sentence because the State did not follow the procedures, outlined in Tennessee Code Annotated section 40-35-203(e), for the imposition of an enhanced punishment. The State responds that the trial court properly ordered the Defendant to serve 100 percent of the 14-year sentence because the Defendant had a prior aggravated robbery charge and Tennessee

---

[6] The witness testimony described the weapon as a screwdriver. However, in issuing its ruling, the trial court referred to the weapon as a "nail pusher."

Code Annotated section 40-35-501(k)(2) requires defendants who are convicted of a subsequent aggravated robbery conviction to serve 100 percent of their sentence.

The defendant cites the preamble to the section 40-35-501(k)(2) legislation in support of the applicability of Tennessee Code Annotated section 40-35-203(e) to the Defendant's sentence. See Crim. Offenses-Crim. Procedure-Sentencing Guidelines Act, 2007 Tenn. Pub. Acts, ch. 594, preamble (eff. Jan. 1, 2008). It states that the Legislature enacted the 2007 amendments, entitled Criminal Offenses—Criminal Procedure—Sentencing Guidelines Act, after noticing the "significant decreases in violent gun crime in other states" that have implemented enhanced punishments for repeat violent offenders.

Tennessee Code Annotated section 40–35–501(k)(2) provides that

[t]here shall be no release eligibility for a person committing aggravated robbery, as defined in § 39-13-402, on or after January 1, 2008, if the person has at least one (1) prior conviction for aggravated robbery, as defined in § 39-13-402, or especially aggravated robbery, as defined in § 39-13-403. The person shall serve one hundred percent (100 percent) of the sentence imposed by the court less sentence credits earned and retained; however, no sentence reduction credits authorized by § 41-21-236 or any other provision of law shall

operate to reduce the sentence imposed by the court by more than fifteen

percent (15%).

Id. We conclude that the Defendant's reliance on section 40-35-203(e) is misplaced. That

section states:

> (e) If the criminal offense for which the defendant is charged carries an
>
> enhanced punishment for a second or subsequent violation of the same offense,
>
> the indictment in a separate count shall specify and charge that fact. If the
>
> defendant is convicted of the offense, then the jury must find that beyond a
>
> reasonable doubt the defendant has been previously convicted the requisite
>
> number of times for the same offense. Upon such finding, the defendant shall
>
> be subject to the authorized terms of imprisonment for the felonies and
>
> misdemeanors as set forth in § 40-35-111.

Tenn. Code Ann. § 40-35-203(e). The first phrase in the aforementioned statute illustrates

that it does not apply to the instant case. The sentence reads "[i]f the criminal offense for

which the defendant is charged carries an enhanced punishment for a second or subsequent

violation of the same offense, the indictment in a separate count shall specify and charge

such fact." Id. (emphasis added). However, the aggravated robbery statute does not carry an

-21-

enhanced punishment for second <u>and subsequent</u> convictions. In fact, neither enhanced punishment nor subsequent offenses are mentioned anywhere in the statute criminalizing the offense.

As the trial court intimated, section 40-35-203(e) deals with an element of the offense, which, if proven, results in an enhanced punishment. Thus, the State's failure to allege the existence of the prior conviction in the indictment would prevent that defendant from being subjected to the enhanced punishment. In that situation, the defendant would still face conviction for the predicate offense, but the court would treat the conviction as a first offense. The sentencing range would remain the same.

This case involves an increase in release eligibility due to a prior aggravated robbery conviction, as mandated by 40-35-501 (k)(2), not an increase in the length of the sentence. Thus, the two statutes deal with two different sentencing issues. <u>See</u> <u>Thurmond v. Carlton</u>, 202 S.W.3d 131, 136 (Tenn. Crim. App. 2006), <u>perm. appeal denied</u>, (Tenn. Aug. 28, 2006) (analyzing the release eligibility mandated by Tennessee Code Annotated section 39-13-523, the multiple rapist statute, and holding that: (1) Tennessee Code Annotated section 40-35-203 (e) and the multiple rapist statute involve different types of sentence enhancements; (2) the multiple rapist statute "does not require the multiple rapist classification for parole eligibility purposes to be included in the indictment"; and, (3) "the classification as a multiple

rapist is automatic and is not left to the discretion of the trial court or the prosecutor"). In the present case, the Defendant's prior convictions rendered him a repeat aggravated robbery offender "as a matter of law," and neither the prosecutor nor the judge could deviate from the release eligibility requirement. See generally Mark A. Percy v. Tenn. Dep't of Corr., No. M2001-01629-COA-R3-CV, 2003 WL 535919 (Tenn. Ct. App., Feb. 26, 2003) (explaining that the "plea bargain worked out by the State and approved by the sentencing court is void because it is inconsistent with Tenn. Code Ann. § 39-13-523. Neither the assistant district attorney general prosecuting Mr. Percy nor the sentencing court had the authority to agree to permit Mr. Percy to be eligible for parole consideration after serving only thirty percent of his sentence or to permit him to reduce his sentence by earning sentence reduction credits"). Therefore, the State was not required to give notice of the applicability of the statute in the indictment for it to apply. By its plain language, the release eligibility requirement is mandatory and automatically applicable to persons who come within its purview. See Andre L. Mayfield v. State, No. M2004-01408-CCA-R3-HC, 2005 WL 1683498 (Tenn. Crim. App. at Nashville, July 18, 2005), perm. appeal denied, (Tenn. Feb. 6, 2006) (holding that "the petitioners classification as a multiple rapist is an operation of law and does not require any notice to the petitioner . . . [and] neither the prosecutor nor the judge could deviate from the release eligibility requirement"); see also Thurmond v. Carlton, 202 S.W.3d at 135-36. As such, the trial court had the authority and, in fact, was required to sentence the Defendant to serve 100 percent of his sentence.

## CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed.

_____
D. KELLY THOMAS, JR., JUDGE