# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs September 16, 2014

## STATE OF TENNESSEE v. THEARON ANTONIO GRAMBLING

**Direct Appeal from the Circuit Court for Blount County**
**No. C-21571      Tammy Harrington, Judge**

---

**No. E2014-00248-CCA-R3-CD-FILED-FEBRUARY 12, 2015**

---

A Blount County Circuit Court Jury convicted the appellant, Thearon Antonio Grambling, of statutory rape by an authority figure and incest; the victim of both offenses was his fifteen-year-old daughter.  The trial court imposed concurrent sentences of four years and six months in the Tennessee Department of Correction.  On appeal, the appellant contends that the evidence is not sufficient to sustain his convictions.  Upon review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court are Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which ROGER A. PAGE and ROBERT H. MONTGOMERY, JR., JJ., joined.

Mack Garner, Maryville, Tennessee (at trial), and J. Liddell Kirk, Knoxville, Tennessee (on appeal), for the appellant, Thearon Antonio Grambling.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Senior Counsel; Michael L. Flynn, District Attorney General; and Clinton E. Frazier, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

At trial, the victim testified that she lived in Ohio with her mother until June 2011 when her mother decided to go to Florida with her boyfriend.  During the drive to Florida, her mother decided to leave the victim with the appellant, the victim's father, in Blount County.  Before she came to Blount County, the victim had little interaction with the

appellant. She said that she expected to stay with the appellant for five or six weeks.

The victim said that in early August, her older brother went to live with their mother in Florida. Her mother's boyfriend did not want to share a home with the children, and she refused to let the victim live with her. Therefore, the victim had to stay with the appellant. The victim said that her mother's abandonment upset and depressed her.

On August 5, 2011, the victim went with the appellant to Kentucky so he could buy Four Loko, an alcoholic beverage that was not available in Tennessee. When they returned to the appellant's apartment, they sat in the living room, drinking the Four Loko and smoking marijuana. The victim, who was wearing basketball shorts and a tank top, announced that she wanted to go to bed. The appellant got angry because she "wasn't drinking it all or whatever." She finished her drink and consumed some of his beverage then went into her bedroom to change into pajamas. She thought someone was following her but decided she was being paranoid because she was "high."

The victim said that when she bent over to remove her panties, she saw the appellant's foot behind her. She turned around to ask what he was doing. The appellant "wrestled" her to the floor, held her legs down, and licked her vagina. The victim attempted to crawl away, but the appellant grabbed her legs and pulled her back toward him. He put his weight on her back to prevent her from moving then penetrated her vagina with his penis. Afterward, the appellant got up and walked out of the room, pulling on his clothes. The victim got up, shut the door, and locked it. She put her clothes back on, crawled into bed, and eventually fell asleep.

The victim said that the next morning, the appellant came to her door and told her he was going to work and would return later. The victim remained in bed, pretending to be asleep. After she heard the appellant's car leave, she took a shower, put on the clothes she was wearing the night before, and went outside to borrow a telephone. She did not see anyone nearby, so she went to the manager's officer and knocked on the door but got no response. She returned to the apartment and tried to use the appellant's computer, but it was "unhooked." The victim said that the appellant did not have a home telephone and that she believed he had taken her cellular telephone.

The victim said that she did not know the appellant's address, so she took a piece of mail and left the apartment. She walked down the street, found a family that was having a yard sale, and obtained permission to use their telephone to call the police. The police responded and transported her to the Child Advocacy Center (CAC). She was interviewed, and a sexual assault examination was performed. Thereafter, the victim was remanded into the State's custody and taken to the Holston Group Home.

On cross-examination, the victim said that she had not seen her father much before she moved to Tennessee. She acknowledged that while living in Ohio, she had used drugs and alcohol and sometimes "bumped heads" with her mother. She said that as they were driving from Ohio to Florida, her mother made a "spur of the moment" decision to take her to Blount County to visit her father. The victim did not have many clothes with her because she had planned to stay with the appellant for only five or six weeks.

The victim had initially believed that her mother would send a plane ticket so that she could travel to Florida. However, on August 2, the victim's brother called their mother and asked whether the victim could come to Florida. Their mother said no, explaining that her boyfriend "didn't want none of the kids down there."

The victim acknowledged that at a juvenile hearing, she testified that after the appellant wrestled her to the ground, he put his fist to her cheek and told her not to fight him. She further acknowledged that she testified that the appellant put his hand over her mouth when she started screaming. She recalled that she was wearing a bra that night; however, she acknowledged that she testified at the preliminary hearing that she was not wearing a bra. Nevertheless, she asserted, "What I said today is right," explaining that her earlier testimony was "what I remembered from that." The victim said that she did not know whether the appellant ejaculated.

Dr. Stephanie Shults, a pediatrician, testified that on August 6, 2011, she performed a sexual assault examination on the victim, during which she collected a rape kit. Dr. Shults found no visible signs of penetrative trauma to the vaginal area, which was common due to the flexibility of the area.

Tennessee Bureau of Investigation (TBI) Agent Josh Abernathy testified by video deposition that in 2011, he was a forensic scientist in the DNA/serology unit of the TBI crime laboratory. Regarding this case, Agent Abernathy tested the following items for DNA evidence: a known sample from the victim, vaginal and oral swabs from the victim, yellow athletic shorts, a gray shirt, black and red athletic shorts, a swab from a red Four Loko can, and a swab from a green Four Loko can.

Agent Abernathy said that the vaginal swabs tested positive for the presence of sperm and that the underwear tested positive for semen; the appellant was the contributor of both samples. Agent Abernathy found a partial DNA profile from a female on the swab from the red can. Although he was unable to definitively identify the contributor of the DNA on the red can, Agent Abernathy said that it was consistent with the victim's DNA. Agent Abernathy was unable to develop a DNA profile from the green can.

On cross-examination, Agent Abernathy clarified that the vaginal swab revealed the presence of limited sperm and that the underwear revealed the presence of semen but no sperm.

Blount County Sheriff's Detective Doug Davis testified that on August 6, 2011, he was dispatched to the appellant's residence on Stone Tree Drive to investigate the victim's allegations. When Detective Davis entered the front door, he saw a trash can containing Four Loko alcoholic beverage cans.

Detective Davis verified that the victim's 911 call was made from the corner of Evelyn Drive and Stone Tree Drive. Detective Davis said that his first impression of the victim was that "she was a very scared little girl." After he spoke with her, a patrol unit transported her to the CAC.

Around 4:00 p.m., while Detective Davis was at the CAC with the victim, the appellant contacted the police dispatcher to report that the victim was missing. After contacting Detective Davis, the dispatcher told the appellant to go to the sheriff's office. When the appellant arrived, Detective Davis and a Department of Children's Services (DCS) representative took him into a room. The appellant "broke down" and became "emotional." Detective Davis allowed the appellant to calm down then advised him of his Miranda rights. The appellant agreed to speak with the detective and the DCS representative.

Detective Davis said that during the interview, he learned that the appellant was forty-three years old. The appellant said the victim came to live with him because she was "out of control" and her mother did not "want to deal with her." When the victim arrived at his residence in June, she had a "bowl" for smoking marijuana that he confiscated and locked in a safe in his bedroom. After the victim had lived with him for a while, he took away her cellular telephone because he "caught her having phone sex with some guy." The appellant said that the victim sometimes slept in his shorts and shirts.

The appellant told Detective Davis that the Thursday prior to the offense, he and the victim went to Kentucky to purchase Four Loko, an alcoholic beverage that was not available in Tennessee. After they returned home that night, the victim became ill and vomited. The appellant helped the victim to bed. She removed her clothes, including her underwear, and gave them to him to wash. On the night of the offense, a Saturday, the victim asked the appellant to allow her to use her telephone to call a friend in Ohio. He agreed and heard her ask the friend to come to Tennessee to get her. Later that night, the appellant drank one "big can" of Four Loko. He denied that the victim drank any alcohol or that there was any marijuana in the apartment.

The appellant said that he went to bed before the victim and that he was "a little messed up." At 3:00 a.m., the appellant heard the victim walking around in the dark and got up to find out what she was doing. The victim said that she was going to bed. She had a blanket and was wearing a hoodie. The appellant denied having sex with the victim. He maintained that the victim made up the allegations because she was "obsessed with getting back" to Ohio. Detective Davis noticed a scratch on the appellant, but the appellant said it was a pimple.

The jury found the appellant guilty of statutory rape by an authority figure and incest. The trial court imposed concurrent sentences of four years and six months for each conviction. On appeal, the appellant challenges the sufficiency of the evidence, contending that "the State's evidence did not establish that he used his custodial or parental authority to accomplish an act of penetration."

## II. Analysis

On appeal, a jury conviction removes the presumption of the appellant's innocence and replaces it with one of guilt, so that the appellant carries the burden of demonstrating to this court why the evidence will not support the jury's findings. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The appellant must establish that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); Tenn. R. App. P. 13(e).

Accordingly, on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. See State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). In other words, questions concerning the credibility of witnesses and the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, and not the appellate courts. See State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990).

The guilt of a defendant, including any fact required to be proven, may be predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. See State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). Even though convictions may be established by different forms of evidence, the standard of review for the sufficiency of that evidence is the same whether the conviction is based upon direct or circumstantial evidence. See State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011).

Incest occurs when a person "engages in sexual penetration . . . with a person, knowing the person to be, without regard to legitimacy . . . [t]he person's . . . child." Tenn.

Code Ann. § 39-15-302(a)(1). Incest is a Class C felony. Id. at (b). Tennessee Code Annotated section 39-13-501(7) defines sexual penetration as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body, but emission of semen is not required." Tennessee Code Annotated section 39-13-532 provides:

> (a) Statutory rape by an authority figure is the unlawful sexual penetration of a victim by the defendant . . . when:
>
> (1) The victim is at least thirteen (13) but less than eighteen (18) years of age;
>
> (2) The defendant is at least four (4) years older than the victim; and
>
> (3) The defendant was, at the time of the offense, in a position of trust, or had supervisory or disciplinary power over the victim by virtue of the defendant's legal, professional or occupational status and used the position of trust or power to accomplish the sexual penetration; or
>
> (4) The defendant had, at the time of the offense, parental or custodial authority over the victim and used the authority to accomplish the sexual penetration.

Statutory rape by an authority figure is a Class C felony. Tenn. Code Ann. § 39-13-532(b). Concerning whether a person is an "authority figure," our supreme court has explained that

> [t]he position of parent, step-parent, babysitter, teacher, coach are but a few obvious examples. The determination of the existence of a position of trust does not depend on the length or formality of the relationship, but upon the nature of the relationship. Thus, the court should look to see whether the offender formally or informally stood in a relationship to the victim that promoted confidence, reliability, or faith.

State v. Kissinger, 922 S.W.2d 482, 488 (Tenn. 1996).

Regarding the statutory rape by an authority figure conviction, the appellant does not

dispute that he is the victim's biological father or that the State presented evidence that he sexually penetrated her while she was staying with him. He contends, however, that the evidence presented by the State indicated that the penetration was accomplished "entirely by force," not as a result of "custodial or parental authority." He maintains that as charged in the indictment, "[t]he offense of statutory rape by an authority figure, as defined by [Tennessee Code Annotated section] 39-13-532, requires that the custodial, parental, supervisory, or disciplinary authority be used to accomplish the penetration." Accordingly, the appellant argues that the State failed to prove the elements of the offense. Additionally, the appellant challenges the credibility of the victim, contending that she was lying because she wanted to return to Ohio.

In State v. Bryan Dale Farmer, No. M2007-01553-CCA-R3-CD, 2008 Tenn. Crim. App. LEXIS 721 (Nashville, Aug. 18, 2008), this court addressed a similar issue. In Farmer, the appellant was a teacher and coach at the victim's school. Id. at *2. The appellant and the victim exchanged text messages, he flirted with her at school, and he got her out of class to engage in sexual intercourse. Id. at *3. The victim acknowledged that the appellant did not threaten her to convince her to engage in a sexual relationship with him. Id. at *6. On appeal, the appellant contended that he did not use his "supervisory power to *accomplish* the sexual act between him and the victim," noting the victim's testimony that he "did not use his supervisory power as a teacher to '*make* her do anything.'" Id. at *20. This court rejected the appellant's argument, explaining that although the statute prohibits an offender from using his authority to accomplish the penetration, it "mentions nothing about using the position to *force* the sexual contact." Id. (citing Tenn. Code Ann. § 39-13-527(a)). This court concluded that in order to sustain a conviction of statutory rape by an authority figure, the proof must show only that a defendant "used his position . . . to bring about or bring to completion the resulting sexual contact" or that he "used his authority position to both cultivate an inappropriate relationship with the victim and to accomplish sexual contact with the victim." Id. at *20-21; see also State v. Henry Wayne Russell, No. M2013-00166-CCA-R3-CD, 2014 Tenn. Crim. App. LEXIS 406, at *28-33 (Nashville, Apr. 29, 2014), application for perm. to appeal filed, (Tenn., June 25, 2014); State v. Margaret L. Holt, No. E2010-02128-CCA-R3-CD, 2012 Tenn. Crim. App. LEXIS 147, at *16 (Knoxville, Mar. 13, 2012); State v. Scott D. Julian, No. E2010-00735-CCA-R3-CD, 2011 Tenn. Crim. App. LEXIS 476, at *39-40 (Knoxville, June 28, 2011).

In the instant case, the victim was fifteen years old when her mother left her in the care and custody of the forty-three-year-old appellant, who was her biological father. The appellant provided a place to live, bought clothes for the victim, and enacted parental punishments such as confiscating her cellular telephone. On the night of the offense, the victim accompanied the appellant to Kentucky, where they bought alcohol. Upon their return to the appellant's apartment, they drank the alcohol, smoked marijuana, and the victim got

"high." When the victim went to her room to change clothes, the appellant snuck up behind her, wrestled her to the floor, and penetrated her vagina with his penis. Forensic testing revealed that the appellant's sperm and semen were in the victim's vagina and on her underwear. As the Farmer court concluded, "if the evidence proved that the [appellant] used his position as [an authority figure] to bring about or bring to completion the resulting sexual contact, such evidence is sufficient to support the [appellant's] conviction." Farmer, No. M2007-01553-CCA-R3-CD, 2008 Tenn. Crim. App. LEXIS 721, at *20-21. Based upon the foregoing, we conclude that the evidence was sufficient to sustain the appellant's conviction of statutory rape by an authority figure. See State v. Robert M. Deunes-Cruz, No. M2011-00879-CCA-R3-CD, 2013 Tenn. Crim. App. LEXIS 10, at *29 (Nashville, Jan. 7, 2013); State v. Wade Tyler, No. M2009-01762-CCA-R3-CD, 2011 Tenn. Crim. App. LEXIS 42, at *14 (Nashville, Jan. 21, 2011).

Regarding the incest conviction, the appellant acknowledges that he is the victim's biological father and that the State presented evidence that he sexually penetrated her while she was living with him in his apartment. We agree and conclude that a reasonable trier of fact could have found the essential elements of incest beyond a reasonable doubt.

### III. Conclusion

Finding no error, we affirm the judgments of the trial court.

_____
NORMA McGEE OGLE, JUDGE

-8-