IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs November 28, 2017

## STATE OF TENNESSEE v. DALE ALBERT GRECA

**Appeal from the Criminal Court for Campbell County**
No. 16921     E. Shayne Sexton, Judge

_____

### No. E2017-00570-CCA-R3-CD

_____

A Campbell County Criminal Court jury convicted the defendant, Dale Albert Greca, of especially aggravated kidnapping, robbery, unlawfully carrying a firearm in a public place, and driving on a suspended license – second offense. As a result of his convictions, the defendant received an effective sentence of twenty-four years in confinement. On appeal, the defendant challenges the sufficiency of the evidence to sustain his conviction for especially aggravated kidnapping. He argues the confinement and removal of the victim did not substantially interfere with the victim's liberty and the confinement was simply incidental to the robbery. He also contends that the evidence is insufficient to support a finding that the kidnapping was accomplished with a deadly weapon because the jury found him guilty of the lesser-included offense of robbery rather than the indicted offense of aggravated robbery. Discerning no error, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and ROBERT W. WEDEMEYER, J., joined.

Wesley D. Stone (on appeal) and Keith Hatfield (at trial), Knoxville, Tennessee, for the appellant, Dale Albert Greca.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Jared R. Effler, District Attorney General; and Tom Barclay, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

*Facts and Procedural History*

On May 6, 2015, the victim, Stanley Foust, was employed by the City of LaFollette within the Public Works Department and was tasked with mowing the right-of-way along Central and Jacksboro Pike. That day, the victim was working alone, driving a city owned, white Jeep Cherokee, and towing a trailer with a zero turn mower on it.

At some point during his work day, the victim stopped at the West End Marathon gas station for a break and to purchase something drink. As he was exiting the gas station parking lot and waiting for traffic to clear, the victim noticed the defendant walking on the other side of the street. The defendant then started running towards the victim's vehicle. Before the victim realized it, the defendant opened the passenger door to the victim's vehicle, had one leg inside the vehicle, and was pointing a gun at the victim. After the defendant entered the vehicle and while pointing his gun at the victim, the defendant "told" the victim to drive him to Caryville. According to the victim, the defendant's gun was a stainless steel revolver. The victim also testified that he was "very scared."

About ten minutes into the drive to Caryville, as they approached the Walmart in Jacksboro, the defendant informed the victim that he wanted to be taken to the Campbell County Sheriff's Department. The victim, in an attempt to comply with the defendant's newest demand, adjusted the route and drove towards the sheriff's department. However, as they approached the Jacksboro courthouse, the defendant asked where the Jacksboro Police Station was located. After the victim pointed to the police station, the defendant instructed the victim to "take [him] back to LaFollette." At no point during the incident did the defendant ever ask the victim to pull over or stop the vehicle. According to the victim, there were several places he could have safely pulled over or pulled off the road had the defendant instructed him to do so.

While driving back to LaFollette, the victim, fearing "that [the defendant] was going to kill me or do something to me," tried to figure out how he could exit the vehicle and safely escape from the defendant. When the victim came to a stop at a red light, he noticed the defendant was looking out the window and not holding the gun on him. The victim took advantage of this moment, jumped out of the vehicle, ran and hid behind an "18-wheeler," and immediately called his supervisor, James Mullins, to inform Mr. Mullins the vehicle and lawnmower had been stolen. Mr. Mullins testified that the victim was "excited, gabbering, and talking real fast" when the victim called him. After speaking with the victim, Mr. Mullins called the police, reported the vehicle stolen, and then went to pick the victim up.

Sergeant Pam Jarrett of the Jacksboro Police Department was on duty May 6, 2015, when dispatch informed officers to be on the lookout ("BOLO") for a stolen City

of LaFollette vehicle hauling a trailer with a lawnmower. The BOLO also informed the officers that the individual in the vehicle was armed. Immediately upon receiving the BOLO, Sergeant Jarrett spotted the defendant and the stolen vehicle. Deputy Alan Shepard of the Campbell County Sheriff's Department also received the BOLO and within minutes saw the defendant and the stolen vehicle.

Once Sergeant Jarrett and Deputy Shepard were able to effectuate a stop of the vehicle, they noted that the defendant was the only individual in the vehicle. A search of the vehicle produced a loaded .38 Smith & Wesson revolver with five live rounds and a wallet containing an EBT card with the defendant's name on it. When Sergeant Jarrett checked the status of the defendant's license, she learned the defendant's license was suspended based on a prior conviction for driving on a suspended license.

Officer James Farmer of the City of LaFollette Police Department arrived on the scene after the defendant was in custody. When Officer Farmer asked the defendant why "he did it," the defendant said he liked the lawnmower and then stopped talking.

Following a *Momon* hearing, the defendant declined to testify and did not call any witnesses. The jury found the defendant guilty of especially aggravated kidnapping, the lesser-included offense of robbery, unlawfully carrying a firearm in a public place, and driving on a suspended license – second offense. As part of a plea agreement that resolved the defendant's sentences in this matter and an untried case, the defendant agreed to a sentence of twenty years for especially aggravated kidnapping, four years for robbery, and eleven months and twenty-nine days for unlawfully carrying a firearm in a public place and driving on a suspended license. As part of the agreement, the defendant's sentences for especially aggravated kidnapping and robbery were to be served consecutively to each other and concurrently to his sentences for the remaining convictions for an effective sentence of twenty-four years in confinement. The defendant filed a motion for a new trial, which was denied by the trial court. This timely appeal followed.

*Analysis*

On appeal, the defendant challenges the sufficiency of the evidence to support his especially aggravated kidnapping conviction. The defendant contends the confinement and removal of the victim did not substantially interfere with the victim's liberty and the confinement was simply incidental to the robbery. The defendant further asserts the evidence is insufficient to support a finding that the kidnapping was accomplished with a deadly weapon because the jury found him guilty of the lesser-included offense of robbery rather than the indicted offense of aggravated robbery. After a thorough review of the record, we affirm the judgments of the trial court.

- 3 -

On appeal, a jury conviction removes the presumption of the appellant's innocence and replaces it with one of guilt, so that the appellant carries the burden of demonstrating to this Court why the evidence will not support the jury's findings. *See State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The appellant must establish that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); Tenn. R. App. P. 13(e).

Accordingly, on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *See State v. Williams*, 657 S.W.2d 405, 410 (Tenn. 1983). In other words, questions concerning the credibility of witnesses and the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, and not the appellate courts. *See State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990).

The guilt of a defendant, including any fact required to be proven, may be predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *See State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). Even though convictions may be established by different forms of evidence, the standard of review for the sufficiency of that evidence is the same whether the conviction is based upon direct or circumstantial evidence. *See State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011).

Tennessee Code Annotated section 39-13-305(a)(1) defines especially aggravated kidnapping as "false imprisonment . . . [a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." False imprisonment is defined as the knowing removal or confinement of another unlawfully so as to interfere substantially with the other's liberty. Tenn. Code Ann. § 39-13-302(a).

The evidence in this case, when viewed in the light most favorable to the State, was sufficient for the jury to find the defendant guilty, beyond a reasonable doubt, of especially aggravated kidnapping. The victim testified the defendant entered his vehicle, without the victim's permission, armed with a revolver. Then, while holding the gun on the victim, the defendant directed the victim to drive to him several different locations. According to the victim, the defendant, despite several opportunities, never directed the victim to exit the vehicle. While the event only lasted around twenty minutes, the statutory elements of especially aggravated kidnapping do not require a finding that the defendant moved the victim any specific distance or restrained him for any particular length of time in order for the defendant's actions to substantially interfere with the victim's liberty. *See State v. Turner*, 41 S.W.3d 663, 670 (Tenn. Crim. App. 2000). The

facts are sufficient to show beyond a reasonable doubt that the defendant knowingly confined the victim by use of a deadly weapon. Thus, the defendant is not entitled to relief.

Next, the defendant, relying on *State v. White*, 362 S.W.3d 559 (Tenn. 2012), contends the evidence is not sufficient to sustain his conviction because the confinement and removal of the victim did not substantially interfere with the victim's liberty and the confinement was simply incidental to the robbery. The State responds that the confinement of the victim was not essentially incidental to the robbery but was, however, a separate and distinct offense. We agree.

A review of our case law reveals a long-standing issue regarding the legitimacy of a kidnapping conviction when the act(s) establishing the offense occurred during an accompanying felony. In *White*, the Tennessee Supreme Court held that "whether the evidence, beyond a reasonable doubt, establishes each and every element of kidnapping, as defined by statute, is a question for the jury properly instructed under the law." The Court concluded that a defendant's constitutional concerns were protected by appellate review of the sufficiency of the convicting evidence. *Id*. at 578. The Court cautioned that "trial courts must ensure that juries return kidnapping convictions only in those instances in which the victim's removal or confinement exceeds that which is necessary to accomplish the accompanying felony." *Id*. To that end, the Court devised the following instruction to be given by trial courts:

> To establish whether the defendant's removal or confinement of the victim constituted a substantial interference with his or her liberty, the State must prove that the removal or confinement was to a greater degree than that necessary to commit the offense of [insert offense], which is the other offense charged in this case. In making this determination, you may consider all the relevant facts and circumstances of the case, including, but not limited to, the following factors:
>
> • the nature and duration of the victim's removal or confinement by the defendant;
>
> • whether the removal or confinement occurred during the commission of the separate offense;
>
> • whether the interference with the victim's liberty was inherent in the nature of the separate offense;

- whether the removal or confinement prevented the victim from summoning assistance, although the defendant need not have succeeded in preventing the victim from doing so;

- whether the removal or confinement reduced the defendant's risk of detection, although the defendant need not have succeeded in this objective; and

- whether the removal or confinement created a significant danger or increased the victim's risk of harm independent of that posed by the separate offense.

*Id*. at 580–81 (footnote omitted).

The record reflects that the trial court gave the *White* jury instruction. The duration of the victim's confinement was longer than necessary to commit the robbery. Despite the defendant's confession to Officer Farmer that "he did it" because he liked the lawnmower, the defendant never allowed the victim to exit the vehicle despite numerous opportunities to do so. Specifically, the victim testified the defendant, armed with a revolver, entered his vehicle and demanded the defendant drive him to Caryville rather than demanding the victim exit the vehicle. The defendant then forced the victim to drive him to several locations and kept the victim in the vehicle at gunpoint for fifteen to twenty minutes. According to the victim, the defendant had several opportunities to demand the victim stop and exit the vehicle, instead, the defendant kept the victim in the car at gunpoint. It was only after the victim escaped that the defendant took control of the vehicle and drove away with the lawnmower, thus, completing the robbery.

From this evidence, we conclude the restraint of the victim did substantially interfere with the victim's liberty and was not incidental to the robbery. Thus, the evidence is sufficient to sustain the defendant's conviction, and the defendant's convictions for especially aggravated kidnapping and robbery do not violate due process. Accordingly, the defendant is not entitled to relief on this issue.

Finally, the defendant contends that the evidence is not sufficient to sustain his conviction for especially aggravated kidnapping because the jury found him guilty of robbery rather than the indicted offense of aggravated robbery. More specifically, the defendant argues that because the jury found that he accomplished the robbery without the use of a deadly weapon "should have resulted in the equivalent finding beyond a reasonable doubt that the offense for especially aggravated kidnapping did not occur" The State responds that 1) the defendant "did not need to utilize his gun to take a vehicle the victim had already vacated" and 2) "consistency between verdicts on separate counts

- 6 -

of an indictment is not necessary." After reviewing the facts and the applicable caselaw, we conclude the defendant is not entitled to relief.

Among other offenses, the defendant was indicted for especially aggravated kidnapping (count No. 1) and aggravated robbery (count No. 2).[1] The jury found the defendant guilty of especially aggravated kidnapping, despite also finding him guilty of the lesser-included offense of robbery in count No. 2; thus, the verdicts are seemingly inconsistent. Nevertheless, the Tennessee Supreme Court has long held that inconsistent verdicts are allowed:

> Consistency in verdicts for multiple count indictments is unnecessary as each count is a separate indictment . . . . An acquittal on one count cannot be considered *res judicata* to another count even though both counts stem from the same criminal transaction. This Court will not upset a seemingly inconsistent verdict by speculating as to the jury's reasoning if we are satisfied that the evidence establishes guilt of the offense upon which the conviction was returned.

*Wiggins v. State*, 498 S.W.2d 92, 93–94 (Tenn. 1973). More recently, the Tennessee Supreme Court stated "that '[t]he validity accorded to [inconsistent] verdicts recognizes the sanctity of the jury's deliberations and the strong policy against probing into its logic or reasoning, which would open the door to interminable speculation.'" *State v. Davis*, 466 S.W.3d 49, 77 (Tenn. 2015) (quoting *United States v. Zane*, 495 F.2d 683, 690 (2nd Cir. 1974)).

Despite the acquittal on the aggravated robbery charge, the State presented evidence from which a rational trier of fact could have found the defendant committed especially aggravated kidnapping and that he employed a firearm during the commission of that crime. Accordingly, the defendant is not entitled to relief on this issue.

_____
J. ROSS DYER, JUDGE

---

[1] Aggravated robbery is defined as robbery accomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon. *See* Tenn. Code Ann. § 39–13–402(a)(1). Robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39–13–401(a). A theft of property occurs when someone, with the intent to deprive the owner of property, knowingly obtains or exercises control over the property without the owner's effective consent. Tenn. Code Ann. § 39–14–103.